IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROBERT V. GUNDERSON, JR. and ANNE D. GUNDERSON,<br><br>    Plaintiffs,<br><br>    vs.<br><br>MAUNA KEA PROPERTIES, INC., a Hawaii corporation; and MAUNA KEA DEVELOPMENT CORP., a Hawaii corporation,<br><br>    Defendants/Third-Party Plaintiffs,<br><br>    vs.<br><br>COUNTY OF HAWAII,<br><br>    Third-Party Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 08-00533 KSC<br><br>ORDER 1) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS AS TO COUNT I OF PLAINTIFFS' COMPLAINT; 2) GRANTING DEFENDANTS/THIRD-PARTY PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT BASED UPON COUNTY OF HAWAII'S AUTHORITY AND THE DECLARATION OF PROTECTIVE COVENANTS, CONDITIONS AND RESTRICTIONS FOR THE COUNTY OF HAWAII; 3) GRANTING DEFENDANTS/THIRD-PARTY PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE ALA KAHAKAI NATIONAL HISTORIC TRAIL; AND 4) DEEMING MOOT THIRD-PARTY DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT |

ORDER 1) DENYING PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT AGAINST DEFENDANTS AS TO COUNT I OF PLAINTIFFS'
COMPLAINT; 2) GRANTING DEFENDANTS/THIRD-PARTY PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT BASED UPON COUNTY OF HAWAII'S
AUTHORITY AND THE DECLARATION OF PROTECTIVE COVENANTS, CONDITIONS
AND RESTRICTIONS FOR THE COUNTY OF HAWAII; 3) GRANTING
DEFENDANTS/THIRD-PARTY PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING THE ALA KAHAKAI NATIONAL HISTORIC TRAIL; AND
4) DEEMING MOOT THIRD-PARTY DEFENDANTS' MOTION TO DISMISS, OR IN
THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Before the Court are: 1) Plaintiffs Robert and Anne

Gunderson's ("Plaintiffs") Motion for Partial Summary Judgment

Against Defendants as to Count I of Plaintiffs' Complaint, filed

February 16, 2010; 2) Defendants/Third-Party Plaintiffs Mauna Kea

Properties, Inc. ("MKP") and Mauna Kea Development Corporation's

("MKDC") (collectively "Defendants") Motion for Partial Summary
Judgment Based Upon County of Hawaii's Authority and the
Declaration of Protective Covenants, Conditions and Restrictions
for The Bluffs at Mauna Kea, filed May 14, 2010; 3) Defendants'
Motion for Partial Summary Judgment Regarding the Ala Kahakai
National Historic Trail, filed May 14, 2010; and 4) Third-Party
Defendant County of Hawaii's ("County") Motion to Dismiss, or in
the Alternative, Motion for Summary Judgment, filed May 14,
2010.[1]

_____

[1] For the purposes of this Order, the following
abbreviations will be used:

1) Plaintiffs' Motion for Partial Summary Judgment Against
Defendants as to Count I of Plaintiffs' Complaint = "Pls.' Mot."
2) Plaintiffs' Memorandum in Support of Motion for Partial
Summary Judgment Against Defendants as to Count I of Plaintiffs'
Complaint = "Pls.' Mem. in Supp. of Mot."
3) Plaintiffs' Concise Statement of Facts (Re Plaintiffs' Motion
for Partial Summary Judgment Against Defendants) = "Pls.' CSF"
4) Defendants' Memorandum in Opposition to Plaintiffs' Motion for
Partial Summary Judgment Against Defendants as to Count I of
Plaintiffs' Complaint = "Defs.' Opp'n to Pls.' Mot."
5) Defendants Concise Statement in Opposition to Plaintiffs'
Motion for Partial Summary Judgment Against Defendants as to
Count I of Plaintiffs' Complaint = "Defs.' RCSF"
6) Plaintiffs' Reply Memorandum Re Plaintiffs' Motion for Partial
Summary Judgment Against Defendants as to Count I of Plaintiffs'
Complaint = "Pls.' Reply"
7) Defendants' Motion for Partial Summary Judgment Based Upon
County of Hawaii's Authority and the Declaration of Protective
Covenants, Conditions and Restrictions for The Bluffs at Mauna
Kea = "Defs.' Mot. Re: County Authority"
8) Defendants' Memorandum in Support of Motion for Partial
Summary Judgment Based Upon County of Hawaii's Authority and the
Declaration of Protective Covenants, Conditions and Restrictions
for The Bluffs at Mauna Kea = "Defs.' Mem. in Supp. of Mot. Re:
County Authority"
9) Plaintiffs' Memorandum in Opposition to Defendants' Motion for

Partial Summary Judgment Based Upon County of Hawaii's Authority and the Declaration of Protective Covenants, Conditions and Restrictions for The Bluffs at Mauna Kea = "Pls.' Opp'n Re: County Authority"

10) Plaintiffs' Responsive Concise Statement of Fact in Opposition to Defendants' Motion for Partial Summary Judgment Based Upon County of Hawaii's Authority and the Declaration of Protective Covenants, Conditions and Restrictions for The Bluffs at Mauna Kea = "Pls.' RCSF Re: County Authority"

11) Reply Memorandum in Support of Defendants' Motion for Partial Summary Judgment Based Upon County of Hawaii's Authority and the Declaration of Protective Covenants, Conditions and Restrictions for The Bluffs at Mauna Kea = "Defs.' Reply Re: County Authority"

12) Defendants' Motion for Partial Summary Judgment Regarding the Ala Kahakai National Historic Trail = "Defs.' Mot. Re: Trail"

13) Defendants' Memorandum in Support of Motion for Partial Summary Judgment Regarding the Ala Kahakai National Historic Trail = "Defs.' Mem. in Supp. of Mot. Re: Trail"

14) Defendants' Separate and Concise Statement of Facts in Support of Motion for Partial Summary Judgment Regarding the Ala Kahakai National Historic Trail = "Defs.' CSF Re: Trail"

15) Plaintiffs' Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment Regarding the Ala Kahakai National Historic Trail = "Pls.' Opp'n Re: Trail"

16) Plaintiffs' Responsive Concise Statement of Fact in Opposition to Defendants' Motion for Partial Summary Judgment Regarding the Ala Kahakai National Historic Trail = "Pls.' RCSF Re: Trail"

17) Reply Memorandum in Support of Defendants' Motion for Partial Summary Judgment Regarding the Ala Kahakai National Historic Trail = "Defs.' Reply Re: Trail"

18) Defendants' Separate and Concise Statement of Facts in Support of Reply Memorandum in Support of Motion for Partial Summary Judgment Regarding the Ala Kahakai National Historic Trail = "Defs.' Reply CSF Re: Trail"

19) County's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment = "County's Mot."

20) County's Memorandum in Support of Motion to Dismiss, or in the Alternative, Motion for Summary Judgment = "County's Mem. in Supp. of Mot."

21) County's Separate and Concise Statement of Facts in Support of its Motion to Dismiss, or in the Alternative, Motion for Summary Judgment = "County's CSF"

22) Plaintiffs' Memorandum in Opposition to the County's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment = "Pls.' Opp'n to County's Mot."

This matter came on for hearing on July 13, 2010. Andrew Beaman, Esq., and Bethany Ace, Esq., appeared on behalf of Plaintiffs.  Melvyn Miyagi, Esq., and Emi Kaimuloa, Esq., appeared on behalf of Defendants.  Deputy Corporation Counsel Michael Udovic appeared on behalf of the County.  After careful consideration of the Motions, the supporting and opposing memoranda, and the arguments counsel, the Court HEREBY DENIES Plaintiffs' Motion, GRANTS Defendants' Motions, and DEEMS MOOT the County's Motion.

BACKGROUND

I.   Factual History

The present action arises out of the mauka[2] relocation of a segment of shoreline trail fronting Lot 8, where Plaintiffs' vacation home is located.  The shoreline trail that is the subject of this litigation, referred to as the "Ala Kahakai Trail," "Kamehameha Trail," and the "Kawaihae-Puako Trail,"

_____

23) Plaintiffs' Responsive Concise Statement of Fact in Opposition to the County's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment = "Pls.' RCSF Re: County's Mot."
24) Defendants' Memorandum in Opposition to the County's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment = "Defs.' Opp'n to County's Mot."

[2]   "Mauka" is defined as "inland."  Leslie v. Bd. of Appeals of County of Hawaii, 109 Hawai'i 384, 386 n.8, 126 P.3d 1071, 1073 n.8 (2006) (citing M. Pukui & S. Elbert, Hawaiian Dictionary 9 (rev. ed. 1986) at 242).

("trail"), runs the length of Lot 29, and is located in the special management area ("SMA").  Defs.' Mem. in Supp. of Mot. Re: County Authority at 1; Pls.' CSF at ¶ 3; Defs' Mem. in Supp. of Mot. Re: Trail at 3.  MKDC owns Lot 29, which is a buffer lot between the ocean and certain oceanfront lots in The Bluffs at Mauna Kea subdivision, including Lot 8.  Pls.' CSF at ¶ 2.

In the 1970s, William Akau and other plaintiffs brought three class action lawsuits against MKP and others to enforce shoreline access.  Pls.' CSF at ¶ 7, Ex. 22.  On July 31, 1981,[3] the parties entered into a settlement agreement ("Akau settlement"), which provides, in pertinent part:

> Smart and Mauna Kea will grant to State, in public trust, a six-foot-wide non-exclusive perpetual easement for pedestrian traffic across that portion of the Property designated as Tax Key Nos. 6-2-2-13 and 6-2-2-4, the general location of such easement ("Easement 3") to be as shown on Exhibit C annexed hereto and the center line of Easement 3 to be located as described in exhibit F annexed hereto. . . .
>
> . . . .
>
> As used in this Settlement Agreement, Easements 1, 2, 3, 4, 5, 6, 7, 8, and 9, which are easements for pedestrian traffic, shall mean nature trails which protect the natural resources and terrain of the area in accordance with the policy of the County of Hawaii for Special Management Area use. Accordingly, Mauna Kea will clear Easements 1, 2, 3, 4, 5, 6, 7, 8, and 9, to make them passable for pedestrian traffic, and will maintain them as

---

[3]  The Akau settlement was filed on August 3, 1981.  Pls.' CSF, Ex. 2.

> nature trails . . . Mauna Kea will place signs at
> reasonable intervals along Easements 1, 2, 3, 4,
> 5, 6, 7, 8, and 9, to inform the public of its
> right to use those easements for pedestrian
> traffic.  From and after such time as Mauna Kea's
> estate in that portion of the Property designated
> as Tax Key Nos. 6-2-2-13 and 6-2-2-4 terminates,
> Smart will maintain Easements 3 and 4 as nature
> trails.  From and after such time as Mauna Kea's
> estate in that portion of the Property designated
> as Tax Key No. 6-2-2-6 terminates, Foundation will
> maintain Easements 6, 7, 8 and 9 as nature trails.

Defs.' RCSF, Ex. 59 at 5, 7, 8; Pls.' CSF, Ex. 2 at 5, 7, 8.

Thus, Defendants and others agreed to create and maintain as

nature trails a number of perpetual easements, passable for

pedestrian traffic.  The Akau settlement provided a metes and

bounds description for the location of Easement 3, which is the

route the shoreline trail running along Lot 29 is supposed to

follow.

On August 26, 1980, the Planning Commission of the

County of Hawaii approved SMA Use Permit No. 133 with an

effective date of May 7, 1980.  Defs.' CSF Re: County Authority,

Ex. A.  SMA Use Permit No. 133 required Defendants to provide

lateral shoreline access along the shoreline.  Id., Ex. A at 3.

Defendants subsequently applied for a shoreline setback

variance ("SSV") because the easements establishing the trail

were located within the shoreline setback area.  Id. at ¶ 4, Ex.

D.  On June 7, 1982, the Planning Commission approved the

application and issued SSV Permit No. 614 "to allow the

establishment of a lateral public pedestrian access along the

shoreline," finding that "the proposed vegetative clearing and

establishment of a shoreline public access is clearly in the

public interest."  Id., Ex. F at 1.  The approval of the SSV was

subject to the following condition, among others:

> The petitioner shall, in consultation with an
> archeologist on location, **route the specific path
> in accordance with the final judgment of Judge
> Ernest Kubota of the Third Circuit Court dated
> October 8, 1981, involving Civil Nos. - 3072,
> 4961, and 5935**, so as to provide minimum impacts
> to the sites in and along the public access; and
> shall submit a copy of the metes and bounds
> description of the trail reflected in the final
> judgment to the Planning Department.

Id., Ex. F at 3 (emphasis added).

On January 19, 1986, the Planning Commission issued a

Findings of Fact, Conclusions of Law, and Decision and Order with

respect to Defendants' petition for SMA Use Permit Nos. 85-16 and

85-17.  Id., Ex. B.  SMA Use Permit No. 85-16 required Defendants

to

> provide both access to the shoreline and 40 public
> shoreline parking stalls on the South Kohala
> Resort.  An easement shall be recorded with the
> State Bureau of Conveyances for both the public
> shoreline access and parking stalls.  The
> location, timing of construction and/or
> availability, restrictions on use and related
> signage for both the public shoreline access, and
> parking shall be subject to the approval of the
> Director.  Additional public shoreline access and
> parking requirements can be imposed in conjunction
> with subsequent SMA permits, if any are ever
> subsequently applied for by the permittee,
> successors, or its assigns.

Id., Ex. B at 26-27.

On November 26, 1986, MKP acquired the fee interest in Lot C (formerly TMK (3) 6-2-2-13), which would later become The Bluffs at Mauna Kea Subdivision, from the Trustees of the Richard Smart Trust.  Pls.' CSF at ¶ 19, Ex. 7.  The conveyance of Lot C was expressly subject to the "[p]rovisions, etc., contained in the Settlement Agreement dated July 31, 1981, filed in Civil Nos. 3072, 4961, and 5935, Circuit Court of the Third Circuit, on August 3, 1981, to which reference is hereby made, and to the easements more particularly described therein."  Id.  On September 17, 1990, MKP conveyed the property to MKDC subject to the Akau settlement.  Id. at ¶ 20, Ex. 8.

In January 1997, the County approved MKDC's subdivision plan for The Bluffs.  Id. at ¶ 21.  The final subdivision map (File Plan No. 2196) references the civil numbers of the Akau cases and shows Easement 3 (6 ft. wide) for Pedestrian Access Purposes.  Id. at ¶ 22, Ex. 9.

On March 17, 1997, Defendants recorded a Declaration of Protective Covenants, Conditions and Restrictions for The Bluffs at Mauna Kea ("CCRs").  Id. at ¶ 23, Ex. 10.  Section 7.6 of the CCRs provides that The Bluffs are subject to certain easements, including

> the six foot wide pedestrian access easement . . .
> located within and/or adjacent to The Bluffs, as
> shown on File Plan No. 2196, and as described in

8

> that certain Settlement Agreement dated July 31,
> 1981, filed in the Civil Nos. 3072, 4961 and 5935,
> Circuit Court of the Third Circuit, State of
> Hawaii, on August 3, 1981.

Id., Ex. 10.  Section 6.6 of the CCRs obligates "owners" to comply with the Akau settlement and to not take or permit action inconsistent with the same.   Id.

In mid-1999, Plaintiffs began discussions with MKDC and its agent MKP for the purchase of an oceanfront lot in The Bluffs, including Lot 8.  Id. at ¶ 28.  On July 10, 1999, Plaintiffs communicated their privacy and view potential objectives to Defendants, and, acknowledging that multiple "paths" existed along certain portions of Lot 8, requested assurances that only one legal trail existed, which was the route running closest to the ocean.  Id., Ex. 14.

On July 17, 1999, Plaintiffs requested a copy of the File Plan Map referenced in paragraph 12.4(c) of the sales contract (relating to the six-foot wide pedestrian access easement).  Defs.' RCSF, Ex. 13.  Tom Stifler, Defendants' then principal broker, provided Plaintiffs with the File Plan Map, and stated that "[t]he existing 6-foot easement is shown, although it is my understanding that the actual easement needs to be 6 feet in width but can be located by us anywhere within the 40-foot setback from the ocean."  Id., Ex. 14.

Plaintiffs and Defendants entered into a sales contract for Lot 8 on July 20, 1999.  Pls.' CSF at ¶ 34, Ex. 43.  Section 12.4(c) of the sales contract contains an acknowledgment that the Buyer understands that portions of The Bluffs are subject to Easement 3, as set forth in the Akau settlement.  Id.  Following a number of communications between Plaintiffs and Defendants, and/or their respective agents, regarding the proper location of the trail, id., Exs. 16-17; Defs.' RCSF, Exs. 15-18, MKDC conveyed Lot 8 to Plaintiffs by Limited Warranty Deed on October 29, 1999.  Pls.' CSF, Ex. 18.

In approximately August or September 2000, Plaintiffs rerouted the trail from Lots 8 and 9 to a location makai[4] of Easement 3.  Defs.' RCSF, Exs. 1-4.  Plaintiffs contemplated subsequent trail relocations in 2001 and 2002, but did not go through with them.  Id., Exs. 5-9; Decl. of Keith Wallace at ¶¶ 9-15.

In late 2000, Plaintiffs requested authorization to replace Kiawe trees fronting their property.  Defs.' RCSF, Ex. 35.  They felt that the trees were "not the best looking" and that coconut trees would better represent the coastal landscape.

---

[4]  "Makai" translates as "toward the sea, in the direction of the sea."  Schwenke v. Outrigger Hotels Hawaii, LLP, 122 Hawai'i 389, 391 n.4, 227 P.3d 555, 557 n.4 (Haw. Ct. App. 2010) (quoting Hawaiian Dictionary 114).

Id.  MKDC agreed to the proposal, see id., Ex. 38, and in April 2001, MKDC and Plaintiffs entered into a Tree Maintenance Agreement, under which Plaintiffs assumed responsibility for maintenance of the trees and agreed to indemnify MKDC against liability related thereto.  Id., Ex. 39.

In a letter to Yoichi Asari, President of MKP, dated October 30, 2003, then Planning Director Christopher Yuen recommended that the section of trail fronting Lot 8 be re-routed inland because of safety concerns related to the trail's placement, which required pedestrians to walk along the edge of a rocky drop-off.  Defs.' CSF Re: County Authority, Ex. M. Following a number of site visits to address the concerns about the trail, Director Yuen sent a letter on November 28, 2007, directing that a number of improvements be implemented immediately, including the mauka relocation of the segment of the trail at issue.  Id., Ex. R.  Defendants had already relocated that segment of trail at the time Director Yuen sent the letter. On December 28, 2007, Defendants, through Belt Collins, confirmed the mauka relocation of the trail fronting Lot 8.  Id., Ex. S.

II.  Procedural History

Plaintiff commenced this action on November 24, 2008, seeking preliminary and permanent injunctive relief (Count I) and monetary damages (Count II).  Compl. at ¶¶ 72-88.  With respect to both Counts, Plaintiffs allege that Defendants are 1)

11

obligated, under federal and state law, to maintain the shoreline trail in its proper location; 2) bound by the Akau settlement, SMA permit, Smart deed, MKP deed, Bluffs file plan, MKDC grant, and the CCRs, to maintain the trail in its proper location; 3) bound by their promises and representations to maintain the trail in its original location; 4) and estopped from relocating the trail inland by the Tree Maintenance Agreement.  Id.

Plaintiffs pray for not less than one million dollars in damages and for a preliminary injunction compelling Defendants, their agents, and those acting in concert with Defendants to 1) move the trail back to the location shown in the Akau settlement and File Plan 2196;[5] 2) remove the signs that discourage users of the trail from walking along the original location of the trail; and 3) continue to maintain the trail in the location described in the Akau settlement and File Plan 2196. Id. at 21.

On January 15, 2009, Defendants filed an Answer and Counterclaim, alleging that Plaintiffs have interfered with Defendants' obligations under the Akau settlement by vandalizing, relocating, and/or otherwise altering portions of the trail (Count I).  Counterclaim at ¶¶ 29-32.  Defendants also allege that Plaintiffs breached the CCRs (Count II); tortiously

---

[5]  Plaintiffs proffer that this location is the pre-2007 location.

12

interfered with contractual relations, i.e., Defendants'
obligations under the Akau settlement (Count III); and
negligently misrepresented that they would not interfere with the
same (Count IV).  <u>Id.</u> at ¶¶ 33-46.  Defendants request damages
and punitive damages (Counts V and VI).  <u>Id.</u> at ¶¶ 47-50.

On November 17, 2009, the Court entered a Stipulation
and Order for Leave to File Third-Party Complaint Against the
County of Hawaii.  On November 18, 2009, Defendants filed their
Third-Party Complaint, seeking 1) a declaration that the County
had, and continues to have, the jurisdiction and authority to
require Defendants to relocate and maintain the shoreline trail
in its present location and 2) judgment over and against the
County for indemnity, contribution, and/or reimbursement, in the
event Plaintiffs have judgment over Defendants.

The present motions followed.

<u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when there is no
genuine issue of material fact and the moving party is entitled
to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(c).  The
moving party has the initial burden of "identifying for the court
those portions of the materials on file in the case that it
believes demonstrate the absence of any genuine issue of material
fact."  <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>,
809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp. v.</u>

Catrett, 477 U.S. 317, 323 (1986)).  In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party.  State Farm Fire & Cas. Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  T.W. Elec., 809 F.2d at 630. The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory.  Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. T.W. Elec., 809 F.2d at 630; Blue Ocean Preservation Soc'y v. Watkins, 754 F. Supp. 1450, 1455 (D. Haw. 1991).

If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990).  There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case.  Celotex, 477 U.S. at 322; Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994); Blue Ocean, 754

14

F. Supp. at 1455.

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence."  T.W. Elec., 809 F.2d at 631 (citing Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986)).   Inferences must be drawn in favor of the nonmoving party.  Id.  However, when the opposing party offers no direct evidence of a material fact, inferences may be drawn only if they are reasonable in light of the other undisputed background or contextual facts and if they are permissible under the governing substantive law.  Id. at 631-32.  If the factual context makes the opposing party's claim implausible, that party must come forward with more persuasive evidence than otherwise necessary to show there is a genuine issue for trial.  Bator v. Hawaii, 39 F.3d 1021, 1026 (9th Cir. 1994) (citing California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, 818 F.2d 1466, 1468 (9th Cir. 1987), cert. denied, 484 U.S. 1006 (1988)).

## DISCUSSION

Plaintiffs seek a permanent injunction compelling Defendants to 1) restore the shoreline trail fronting Plaintiff's property to its pre-2007 location and 2) to remove all signs re-

15

directing pedestrians to the trail's current location.  It is Plaintiffs' position that Defendants' relocation of the trail 1) breached agreements made with Plaintiffs concerning the location of the trail; 2) breached the Akau settlement; 3) breached Defendants' obligations under the CCRs; 4) violated Hawaii Revised Statutes ("HRS") § 7-1; and 5) violated the National Trails System Act ("NTSA").

In view of the County's opposition, Plaintiffs also request a finding by the Court that 1) the County has no legal authority to relocate the trail; 2) the County is barred from relocating the trail pursuant to the Akau settlement; 3) the County is barred from relocating the trail under HRS § 7-1; and 4) any authority that could be claimed by the County is preempted by the NTSA.

Defendants meanwhile move for summary judgment based on the County's authority, the CCRs, NTSA, and on the grounds that Plaintiffs acted with "unclean hands."

I.   Permanent Injunction

Plaintiffs contend that an injunction is the proper remedy for interference with an easement or right-of-way.  They claim that money damages cannot make them whole.  Defendants counter that Plaintiffs cannot establish any of the requirements for a permanent injunction – they cannot establish irreparable injury; a diminution in value of property can be addressed with

16

monetary compensation; and the public interest in safe access
along the trail will not be served by granting the injunction.

Under Hawaii law,[6] the standard for interlocutory
injunctive relief is threefold: "(1) Is the party seeking the
injunction likely to prevail on the merits? (2) Does the balance
of irreparable damage favor issuance of an interlocutory
injunction? (3) To the extent that the public interest is
involved, does it support granting the injunction?" Penn v.
Transp. Lease Hawaii, Ltd., 2 Haw. App. 272, 276, 630 P.2d 646,
649-50 (1981) (citing Life of the Land v. Ariyoshi, 59 Haw. 156,
577 P.2d 1116 (1978)); Morgan v. Planning Dep't, County of Kauai,
104 Hawai'i 173, 189, 86 P.3d 982, 998 (2004).  The standard for
granting a permanent injunction is essentially the same as a
preliminary injunction except that the plaintiff must show actual
success on the merits, as opposed to a likelihood of success on
the merits.  Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531,
546 n.12 (1987).

As the Court will discuss below, Plaintiffs' claims
fail as a matter of law.  Consequently, they are not entitled to
a permanent injunction given that they cannot demonstrate success

---

[6] Courts apply state law when deciding whether to issue a
permanent injunction in cases arising under diversity
jurisdiction.  Noell Crane Systems GmbH v. Noell Crane and
Service, Inc., 677 F. Supp. 2d 852, 877 (E.D. Va. 2009).

on the merits.

II.   <u>2007 Relocation of the Trail</u>

Defendants submit that they cannot be held liable for relocating the trail in 2007 at the direction of the County of Hawaii because the County has the jurisdiction and authority to direct Defendants to relocate the trail for safety and other reasons.  Plaintiffs argue that the County did not order the relocation of the trail and furthermore, that the County lacked the authority under the SMA or SSV Regulations to so order. Plaintiffs assert that Defendants and the County can only relocate the trail with the consent of all the parties to the Akau settlement and the court's approval, neither of which has been obtained.  The Court must first determine whether the County, through then Planning Director Yuen, ordered the relocation of the trail and if so, whether he had the authority to do so.

A.   <u>The County, Through its Planning Director, Ordered the Relocation of the Trail</u>

In a letter to Yoichi Asari, President of MKP, dated October 30, 2003, Director Yuen recommended that a section of trail be re-routed inland:

> We are requesting a survey of the public access
> easement traversing parcel 28[7] in order to
> determine its exact location per the metes and

---

[7]   None of the parties dispute that this pertains to Lot 29.

> bounds description that was recorded in 1982.
> There is one section of the trail route that
> appears to have been moved subsequent to
> recordation.  We have concerns regarding the
> safety of trail users at that location which
> involves walking along the edge of a rocky drop-
> off.  In the interest of public safety we
> recommend that section of the trail be re-routed
> inland.  We ask that you notify us when the survey
> markers are in place to give us the opportunity to
> see the easement's location on-the-ground.

Defs.' CSF Re: County Authority, Ex. M.  Following a number of

site visits to address the concerns about the trail, Director

Yuen sent a letter on November 28, 2007, directing that a handful

of improvements be implemented immediately, including, in

pertinent part:

> 2.    Move the "Trail Closed-Use Alternate Route"
>       sign in photos #31 and #32 to the beginning
>       of the old path over the sea cave.  This is a
>       more appropriate location for the sign in
>       order to designate that the old trail is
>       closed.
>
> 3.    Place a warning hazard sign at the cliff edge
>       shown in photos #37 and #38.  The ground at
>       the cliff edge lacks vegetation to discourage
>       pedestrians from walking to the edge. . . .
>
>       . . . .
>
> 5.    The cliff under a portion of the trail (photo
>       #19) is eroding.  Relocate the trail in this
>       area at least 10 feet mauka from its present
>       location.

Id., Ex. R.  The parties dispute whether these letters constitute

an order by the County to relocate the trail.  In response to

Plaintiffs' assertion that the November 2007 letter was sent

after Defendants had moved the trail, Defendants clarify that the County did not know about the trail relocation until Defendants so informed them on December 28, 2007, one month after Director Yuen sent the letter.  Id., Ex. S (confirming the mauka relocation of the trail fronting Lot 8).

When questioned about the November 2007 letter, Director Yuen explained, in his deposition, that MKP was to complete the seven listed items immediately.  Id., Ex. I at 44:12-14.  He also testified that he instructed MKP to move the trail fronting Lot 8 inland:

> Q    It states, "The cliff under a portion of
>      trail (photo #19) is eroding.  Relocate the
>      trail in this area at least ten feet mauka
>      from its present location."
>
>      And then looking at photo number 19, there
>      appears to be two photo numbers 19, is that
>      correct?
>
> A    Yes.
>
> Q    Okay.  This is the trail fronting the
>      Gunderson property, is that correct?
>
> A    Yes.
>
> Q    And so you're instructing the Mauna Kea
>      Properties to relocate the trail away from
>      the cliff.
>
> A    Yes.

Id., Ex. I at 44:19-25; 45:1-6.  Current Planning Director Bobby Jean Leithead-Todd confirmed that the County had instructed MKP to move the trail:

Q       So basically Mr. Yuen, back when he was the
        planning director, said you shall move it,
        instructing Mauna Kea to move it.

A       Uh-huh.

Q       And even though there was no lawsuit
        compelling them to move it, the fact that the
        County has told [sic] to move it, it was an
        appropriate reaction by Mauna Kea to move the
        trail.

A       Yeah, I think it was consistent with what the
        department saw as its duties in the area.

Q       And if Mauna Kea had refused to move it, the
        hammer, or the threat, if you will, would
        have been legal action by the County against
        Mauna Kea to force it to –

A       We would have probably looked at, you know,
        possibly looking at whether we could cite you
        for a violation of the public access
        requirements, possibly going back to the
        Planning Commission.

        And then if we felt really strongly about
        this being unsafe, whether in fact it's
        something that we have to go to court for.

Id., Ex. J at 142:13-25; 143:1-8.  Significantly, in its Motion,

the County argues that "the evidence establishes that the

**Planning Director notified Defendants that the trail had to move**

due to safety concerns."  County's Mot. at 23 (emphasis added).

The foregoing evidence demonstrates that the County indeed

directed Defendants to relocate the trail inland.  It is clear

that Defendants were expected to address the concerns regarding

the trail fronting Lot 8 by moving it to the location mauka of

Easement 3, and that a failure to comply might have resulted in

21

action by the County.  In light of the Court's conclusion that
the County ordered Defendants to relocate the trail, the
dispositive issue is whether the County had the authority to do
so.

B.   <u>County Authority</u>

        Plaintiffs acknowledge that the Planning Director has
the authority to enforce the existing setbacks and conditions of
variance permits, but posit that said authority does not allow
revision or creation of new conditions under an existing permit
or development of new trails within the setback area.[8]
Defendants insist that amendments to SMA 133, SMA 85-16, or SSV
614 were unnecessary because the relocation of the trail was an
enforcement of conditions under said permits and for the purpose
of ensuring public safety.  Director Yuen's authority to mandate
the relocation of the trail therefore turns on whether his

---

        [8]  This argument is contrary to Plaintiffs' position that
their proposed alterations to the pre-2007 trail would not
trigger an SMA because of SSV Permit No. 614.  If Plaintiffs'
proposed widening of the pre-2007 trail, see Pls.' CSF, Ex. 29,
does not require a permit or amendment to the current permits,
then their assertion that the 2007 relocation of the trail
required the involvement of the Planning Commission, which means
that an amendment to the permits or issuance of a new permit was
necessary, is untenable.  Notably, the pre-2007 trail, like the
current trail, does not follow Easement 3.  So, Plaintiffs cannot
make the distinction that alterations to a trail that is
"properly" located differs from relocating a trail off of
Easement 3.  Despite Plaintiffs' repeated argument otherwise,
there is no evidence that the parties to the Akau settlement
intended for the metes and bounds description to correspond to
the position of the pre-2007 trail fronting Lot 8.

actions constitute an enforcement of the conditions under the SMA Use permits and SSV permit, or whether amendments to the permits, and/or new permits were required.

The Coastal Zone Management Act ("CZMA") "is a comprehensive State regulatory scheme to protect the environment and resources of our shoreline areas." Morgan, 104 Hawai'i at 181, 86 P.3d at 990 (citations omitted).  The stated purpose of the CZMA is as follows:

> The legislature finds that, special controls on developments within an area along the shoreline are necessary to avoid permanent losses of valuable resources and the foreclosure of management options, and to ensure that adequate access, by dedication or other means, to public owned or used beaches, recreation areas, and natural reserves is provided. The legislature finds and declares that it is the state policy to preserve, protect, and where possible, to restore the natural resources of the coastal zone of Hawaii.

Haw. Rev. Stat. § 205A-21.  The Planning Commission of each County is the "special management area authority and is authorized to carry out the objectives, policies and procedures" of the CZMA.  See id. § 205A-27; id. § 205A-22;[9] Brescia v. N. Shore Ohana, 115 Hawai'i 477, 498, 168 P.3d 929, 950 (2007)

---

[9]  "Authority" is defined as "county planning commission, except in counties where the county planning commission is advisory only, in which case 'authority' means the county council or such body as the council may by ordinance designate.  The authority may, as appropriate, delegate the responsibility for administering this part."  Haw. Rev. Stat. § 205A-22.

(citation omitted); Rule 9-6 of the Rules of Practice and

Procedure of the County of Hawaii Planning Commission ("Planning

Commission Rules") (Planning Commission to implement objectives

and policies set forth in HRS § 205A-2).  The Planning Commission

issues SMA and SSV permits and handles requests for amendments

of the same.  See Planning Commission Rules 8 and 9-11.

The County of Hawaii Planning Department has the

authority to enforce the shoreline setbacks.  See Haw. Rev. Stat.

§ 205A-43.6; see id. § 205A-43 (establishing the duties and

powers of the County of Hawaii Planning Department with respect

to shoreline setbacks);[10] see also Rule 11-12(a) of the Rules of

---

[10]   HRS § 205A-43 provides:

(a) Setbacks along shorelines are established of
not less than twenty feet and not more than forty
feet inland from the shoreline. The department
shall adopt rules pursuant to chapter 91, and
shall enforce the shoreline setbacks and rules
pertaining thereto.

(b) The powers and duties of the department shall
include, but not be limited to:

(1) The department shall adopt rules under
chapter 91 prescribing procedures for determining
the shoreline setback line; and

(2) The department shall review the plans of
all applicants who propose any structure,
activity, or facility that would be prohibited
without a variance pursuant to this part. The
department may require that the plans be
supplemented by accurately mapped data and
photographs showing natural conditions and
topography relating to all existing and proposed

Practice and Procedure of the County of Hawaii Planning

Department ("Planning Department Rules") (charging the Planning

Department with enforcing Rule 11, which deals with the shoreline

setback).  This authority includes the "enforcement of all

conditions and requirements associated with a variance,"

Planning Commission Rule 8-13, as well as development within the

SMA.  Planning Commission Rule 9-9 ("All development within the

Special Management Area shall be administered through the

Department under this rule pursuant to the objectives and

policies and the Special Management Area guidelines as provided

by Chapter 205A, HRS.").  Under the Planning Department Rules,

the Planning Department "consists of the Director, the

Commission, and the necessary staff."  Planning Department Rules

1-6; see id. 1-3(5).

Three permits - SMA Use Permit Nos. 133 and 85-16, and

SSV Permit No. 614 - are relevant to the Court's inquiry into

whether the relocation of the trail was an enforcement of

conditions under the permits, or an action requiring amendments

to the permits, or new permits altogether.  SMA Use Permit No.

133 requires Mauna Kea Land Corporation "to provide a lateral

─────────────────────

structures and activities.

Haw. Rev. Stat. § 205A-43.

25

public access along the shoreline." Defs.' CSF Re: County

Authority, Ex. A at 2-3. SMA Use Permit No. 85-16 imposes the

following pertinent condition:

> For the purpose of public access to the shoreline,
> the applicant shall provide both access to the
> shoreline and 40 public shoreline parking stalls
> on the South Kohala Resort. An easement shall be
> recorded with the State Bureau of Conveyances for
> both the public shoreline access and parking
> stalls. **The location, timing of construction**
> **and/or availability, restrictions on use and**
> **related signage for both the public shoreline**
> **access, and parking shall be subject to the**
> **approval of the Director.** Additional public
> shoreline access and parking requirements can be
> imposed in conjunction with subsequent SMA
> permits, if any are ever subsequently applied for
> by the permittee, successors, or its assigns.

Id., Ex. B at 26-27 (emphasis added). Defendants applied for SSV

No. 614, in part "to allow the establishment of a lateral public

pedestrian access along the shoreline." Id., Ex. F; see also

id., Ex. D. The following is a description of the proposed

actions to be taken in connection with SSV No. 614:

> The public access paths to be established pursuant
> to this variance would fulfill the requirements of
> that certain settlement agreement entered into by
> Mauna Kea Properties on July 31, 1981; to settle
> Civil Nos. 3072, 4961 and 5935, in the Circuit
> Court of the Third Circuit . . .
>
> The project as proposed will consist of creating a
> natural path within a 6-foot wide easement along
> the shoreline by clearing vegetation and
> obstructing debris. An existing trail is evident
> for some of the way along the Mauna Kea Properties
> shoreline. Appropriately, this pathway will be
> utilized as much as possible for the proposed
> pedestrian access. In areas where no trail is

26

> evident, a pathway will be cleared and made
> traversable.  Signs at reasonable intervals along
> the trail will be placed to inform the public of
> its right to use the access.  Mauna Kea Properties
> will maintain the route to allow a continuous and
> passable trail along the shoreline for public use.

Pls.' RCSF Re: Trail, Ex. 56.  The approval of SSV No. 614 was

based, in part, on the following:

> Although there is an existing trail in portions of
> the coastline, the vegetation and debris,
> especially in the northern section presents some
> difficulty in walking along the shoreline.  The
> clearing and establishing of a trail will
> facilitate public access.  The signage will also
> increase the public's awareness of a right-of-way
> along the coast.  Therefore, the proposed
> vegetative clearing and establishment of a
> shoreline public access is clearly in the public
> interest.

Defs.' CSF Re: County Authority, Ex. F.  The approval of the SSV

was conditioned upon Defendants' consultation with an

archeologist to route the trail in accordance with the Akau

settlement, and submission, to the Planning Department, of the

metes and bounds description of the trail.[11]  Id.  Hence, under

--------

[11]  Plaintiffs assert that the County ratified the easement
obligation set forth in the Akau settlement and ordered
Defendants to route the trail in accordance with its historic
location.  Pls.' Opp'n Re: County Authority at 6; see also Pls.'
Reply at 5 ("There is no dispute that the Planning Commission –
which is a higher authority than the Planning Director –
effectively ratified the Akau agreement when it authorized the
maintenance of the shoreline trail in its original location and
granted a shoreline setback variance to MKP in 1982.").  The
Court disagrees.  SSV No. 614 clearly directs Defendants to route
the trail in accordance with Akau settlement, not in accordance
with the trail's purported historic location.  As the Court will
later discuss, there is no evidence to suggest that the metes and

these permits, Defendants are required to provide lateral public access along the shoreline in a location consistent with the metes and bounds description set forth in the Akau settlement.

Both former Director Yuen and Director Leithead-Todd share the belief that the County is vested with the jurisdiction and legal authority to determine the location of the shoreline trail.  Former Director Yuen testified as follows:

> Q    Okay.  What was the basis for the jurisdiction of the County of Hawaii over the matter of the shoreline trail?
>
> A    Several SMA permits.
>
> Q    Okay, and according to the SMA permits, did the County have the right to determine the specific location of the shoreline trail?
>
> A    Ultimately, yes.  Within reason, let's put it that way.
>
> Q    Could you explain to me what you mean by that?
>
> A    There are several SMA permits involved.  I don't remember the exact wording of each of them, but 133, 142.  I'm not sure of the number, but there's a permit for The Bluffs itself, and I'm not sure if the SMA permit for the Hapuna Prince includes this as public access or not.  And all these build upon the original easement granted in the Akau case.
>
> But the gist of the, the gist of the requirement is that there has to be a safe, walkable pedestrian lateral trail between the

---

bounds description in the Akau settlement meant to reference a then-existing trail, or the historic location, if at all, of the trail.

> Mauna Kea Beach Hotel and the Hapuna Prince
> Hotel, or Hapuna Beach.

Id., Ex. I, 56:20-25; 57:1-16.  Director Leithead-Todd testified that the County has the legal authority to direct Defendants to place the trail in a particular location.  Id., Ex. J at 18:16-19; see also id. at 148:20-23 (testifying that it is consistent with the planning director's authority to give instructions to Mauna Kea).

Former Director Yuen went on to acknowledge that he did not believe the County had the authority to alter Easement 3, but that Mauna Kea had an obligation under the SMA Use permits to provide a lateral shoreline trail:

> Q    Okay, and the State being the holder of the
>      easement, what did you, in your capacity as
>      planning director, what did you perceive the
>      nature of your rights or the county's rights
>      vis a vis that particular easement since it
>      was granted to the State?
>
> A    Well, the easement itself, and I think this
>      is the reason for one of my concerns, and
>      what Anne Mapes was referring to, I don't
>      believe the County had the right to alter
>      that easement.  That there's, my
>      understanding, that there was a recorded
>      easement agreed upon as a result of that
>      settlement.
>
>      However, independently of that settlement,
>      there were after, subsequent to that
>      settlement, there were SMA permits granted to
>      Mauna Kea Properties which required public
>      access between Kaunaoa Bay and Hapuna Prince.
>
> Q    Kaunaoa Bay, just for purposes of clarity, is
>      the bay that fronts the Mauna Kea Hotel, is

that correct?

A    The Mauna Kea Beach Hotel, correct.  So there
     is – although there is an independent
     obligation under those SMA permits to have a
     lateral shoreline trail.

     Now, naturally, you know, you have an
     easement in the same location as a result of
     the Akau settlement, and so you're trying to
     coordinate the trail, the trail that's
     required by the SMA permits with the Akau
     easement, but they are, it is a separate
     responsibility of Mauna Kea under the SMA
     permits.

Id., Ex. I at 58:18-25; 59:1-20.  Contrary to Plaintiffs'

argument that this testimony stands for the proposition that the

County lacks the authority to move the shoreline away from its

historic location, the foregoing merely confirms that while

former Director Yuen did not believe that Easement 3 itself could

be altered, the County was not precluded from creating a safe,

walkable, lateral trail, off of Easement 3, between Kaunaʻoa Bay

and Hapuna Beach Prince Hotel.  Indeed, he also testified that:

    I know that because the original public access
    path did come out of a settlement agreement of
    lawsuits, where Bill Akau was one of the
    plaintiffs, it resulted in a described easement,
    that it would be desirable to stay within that
    easement.

    Now, if the trail is not walkable or dangerous,
    then **rather than extinguish portions of that
    easement, which I think would be very complicated
    because of the parties to a lawsuit, so my thought
    was you would make an additional easement.**

    If you had to reroute the trail, you would make an
    additional easement, so that you keep people

30

> walking in an easement rather than have an
> informal path where people are just walking all
> over the place.  And the primary reason for
> rerouting the easement would be safety.

County's CSF, Ex. 3 at 26:20-25; 27:1-10 (emphasis added).

        1.   <u>Relocation of the Trail was an Enforcement of
Conditions</u>

After carefully reviewing the applicable rules and

statutes, and the actions by the County, the Court finds that

former Director Yuen's directive to move the trail was within the

scope of his authority to enforce conditions of the applicable

SMA and SSV permits.  SMA Use Permit No. 85-16 clearly

contemplates the Planning Director's involvement by expressly

subjecting "the location, timing of construction and/or

availability, restrictions on use and related signage for . . .

the public shoreline access" to the approval of the Planning

Director.[12]  Defs.' CSF Re: County Authority, Ex. B at 27.  Not

all changes following the issuance of permits require an

amendment or a new permit.  <u>See</u>, <u>e.g.</u>, Planning Department Rule

11-12(b) ("Any structure or activity prohibited within the

shoreline setback area that has not received appropriate

---

     [12]  This permit does not, as Plaintiffs claim, state that
additional easements may be required as a part of another permit
application.  Pls.' Opp'n Re: County Authority at 10.  Rather,
"**[a]dditional public shoreline access and parking requirements
can be imposed in conjunction with subsequent SMA permits**, if any
are ever subsequently applied for by the permittee, successors,
or its assigns."  Defs.' CSF Re: County Authority, Ex. B at 27
(emphasis added).

approvals or a shoreline setback variance or that has not complied with conditions of said variance shall be removed or corrected.").

Moreover, a purpose of obtaining SSV Permit No. 614 was to fulfill the requirements of the Akau settlement and to maintain a route "to allow a continuous and passable trail along the shoreline for public use," as required by SMA Use Permit No. 133. Pls.' RCSF Re: Trail, Ex. 56. Condition 2 of SSV Permit No. 614 mandated that the trail be routed in accordance with the Akau settlement. Defs.' CSF Re: County Authority, Ex. F. In addition to the metes and bounds description of the route, attached as an exhibit to the settlement agreement, the agreement provides that Mauna Kea will clear Easement 3, make it passable for pedestrian traffic, and maintain it as a nature trail.[13] Defs.' RCSF, Ex. 59 at 7-8; Pls.' CSF, Ex. 2 at 7-8. To enforce the conditions and mandates of the permits and the Akau settlement, former Planning Director Yuen ordered the relocation

---

[13] According to Defendants, the Akau settlement calls for a trail in the "general location" of Easement 3. Defendants are mistaken. The reference to the location of Easement 3 in the settlement agreement is that "**the general location of such easement ("Easement 3") to be as shown on Exhibit C** annexed hereto and the center line of Easement 3 to be located as described in exhibit F annexed hereto." Defs.' RCSF, Ex. 59 at 5; Pls.' CSF, Ex. 2 at 5. As such, under the agreement, the trail was to be routed according to the metes and bounds description, and the general location of the trail was shown on Exhibit C, attached to the agreement.

of the trail, which he felt had become unsafe to pass.  It was within the scope of his authority to do so, and his actions were consistent with the permits and Akau settlement.

The plaintiffs in <u>Akau v. Olohana Corp.</u> brought suit because defendant landowners or tenants had barred all public access across their land to the beach, thereby preventing the plaintiffs from using a public right-of-way along once public trails to access a beach.  65 Haw. 383, 384-90, 652 P.2d 1130, 1132-35 (1982).  No such impediment exists here.  Neither Defendants nor the County have prevented or barred access to a right-of-way across Lot 29, and more particularly, the area fronting Lot 8.  Though rerouted inland to ensure a passable and safe trail, a right-of-way remains in place for the public to travel along the shoreline between Mauna Kea Beach Hotel and Hapuna Beach Prince Hotel, and correspondingly, Kauna'oa Bay and Hapuna Beach.  As a result, the relocation of the trail does not contravene the intent and purpose of the Akau settlement. Instead, the relocation complies with the SMA and SSV permits and the terms of the Akau settlement, despite the placement of the trail slightly mauka of the metes and bounds description set forth therein, by providing a continuous and passable nature trail along the shoreline for public use/pedestrian traffic.

33

2.    The Planning Director Had the Authority to Move
      the Trail to Ensure the Safety and Welfare of the
      Public

Consistent with his authority to enforce the SMA and

SSV permits, and relatedly, the Akau settlement, former Planning

Director Yuen validly ordered the relocation of the trail to

ensure the safety and welfare of the public.  Cf. Haw. Rev. Stat.

§ 46-1.5 (authorizing the County to enact ordinances necessary to

protect health, life and property).[14]  Plaintiffs challenge the

determination, countering that Defendants have not offered any

competent evidence to support their position on the safety of the

trail.  However, the evidence clearly demonstrates that concerns

about the safety of the trail compelled former Director Yuen to

order the relocation of the segment fronting Lot 8.  He testified

that:

> A    Well, you know, in the trail, certainly
>      safety was an issue.
>
>      At some point, and I don't remember exactly
>      when, I walked the trail, and I think it was
>      around this general time period, and there
>      were some problems with both figuring out
>      where you were supposed to walk, because
>      there were a number of paths.  It was poorly
>      signed.  It wasn't, the pathways were not

---

[14]  The Court recognizes that this statute deals with the
enactment of ordinances, which is distinguishable from the
present issue before the Court.  However, the fact that the
authority has been delegated to the County to enact ordinances
necessary to protect health, life and property, speaks to its
general power to take action necessary to ensure the safety of
the public.

that distinct.

And there was at least one place where there seemed – where it looked hazardous.  And I don't know if it was hazardous where the trail was supposed to be or if it was hazardous on one of the alternate pathways, but there was definitely a place where it was hazardous, at least one place where it was hazardous.

Q     (by Mr. Miyagi) And you were concerned because of the hazardous condition about the safety of users, and would have wanted the trail to be relocated so it would be safe for trail users.

A     Yeah, again, I don't know where, if the hazardous section was where the trail was supposed to be according to the easement, but if it was, then it would have to be relocated someplace else.

Defs.' CSF Re: County Authority, Ex. I at 27:16-25; 28:1-13.

Director Leithead-Todd confirmed that safety issues arose with

respect to the segment of trail fronting Lot 8.

Q     . . . the trail which runs through lot 29 in the area fronting the Gunderson property was relocated.  Are you aware of that fact historically?

A     Yes.  I think that what actually occurred was that the trail was relocated off of the metes and bounds of the proposed alignment that came out of – I believe it was the Akau case.

And then there was an inquiry to the department, because there was concern that the way the trail was relocated was dangerous, because the trail had been relocated makai of what the trail alignment was supposed to be.

Then as a result of that, staff went out and

35

made a recommendation that the trail should
be moved mauka of both the existing trail,
which was makai of the easement, and that it
should go mauka of the easement, in fact, in
order to be safe for public access.

Id., Ex. J at 14:14-25; 15:1-7.  She further testified that in

effecting her duty to protect the public, she has conducted site

visits to evaluate the safety of segments of trail, and to

ascertain whether relocation is necessary.

A     . . . .

And we have a general duty under [HRS]
Chapter 46 to protect public health and
safety.

In the case of this particular trail, we
believe that we have the authority to work
with a property owner to designate a safe
trail where the public can traverse.

And part of that is kind of understanding the
history of public trails in Hawaii as they
evolved over time.  As natural events
occurred, whether they be earthquake, lava
flow, natural erosion over time, people moved
trails mauka and makai of particular paths to
create safe passage for people.

And we think we have a duty to protect the
public if there is an existing alignment that
we deem unsafe, and to work with the property
owner to realign that public access trail to
ensure that the public is safe.

And part of that is our knowledge that in the
past there have been people who have been
injured on trails, and in particular in the
area of Mauna Kea, as the case of someone who
fell off the trail and was killed.  And
whether that was as a result of the alignment
or not, it has heightened our sensitivity to
trail alignment in trying to protect public

36

health and safety. . . .

. . . .

So I have, in fact, in other cases gone on
hikes to property to determine whether a
trail that had been agreed to in the past was
currently safe or whether it needed to be
relocated, and in a number of cases, we have
told property owners that the trails need to
be relocated because they're not safe.

Q    Okay, so this instance involving the Mauna
Kea Properties and the trail fronting the
Gunderson property isn't the only occasion
where the County of Hawaii has told someone
to move a trail because it was deemed to be
not as safe as you were comfortable with.

A    No, it is not.  In fact, the areas that have
been the most problematic have been from, I
would say just from North Kohala through
South Kohala.  And that's because a lot of
the trails there are very close to the ocean,
and there have been issues about whether the
trails –

Part of the problem is sometimes you put a
trail on a map, and unless you physically
walk that trail, you don't really know what's
going on.  And what we have found is that
sometimes the alignments that have been put
on a, like a TMK type of a map of the
property and what's physically on the ground
are not compatible with safe passage.

Id., Ex. J at 21:6-25; 22:1-5, 21-25; 23:1-19.

Plaintiffs submit that the only evidence concerning the

safety of the trail is that propounded by their expert, Dr. James

Kwong, who found that the current trail location has more safety

issues than the previous location.  Pls.' Opp'n Re: County

Authority at 16.  In actuality, Dr. Kwong merely observed that

"[t]he current relocated trail contains a steeper section near the top of the knoll, and the trail surface is covered with sandy soils on hard rocky surface.  The sandy soils on a harder sloping surface can be a slippage hazard to hikers."  Pls.' CSF, Ex. 29 at 6.  Notably, he also observed that a

> short section of the trail is close to the edge of an approximately 10 to 15 feet high near vertical to slightly overhanging rock face . . . if a trial [sic] user is not paying attention to the trail condition and keep on the trail at this location, **there can be a potential fall hazard.**

Id., Ex. 29 at 3-4 (emphasis added); see also id., Ex. 52.  Even he acknowledges that the creation of an easier trail would require modifications.  Id., Ex. 29 at 4.  The Court, having traveled across both the current and pre-2007 trails fronting Lot 8,[15] recognizes the potential hazards of the pre-2007 trail, a fall from which could result in serious injury given its location at shoreline's edge.  Indeed, injuries, and even death, have resulted from falls off cliffs within the area between Mauna Kea Beach Hotel and Hapuna Beach Prince Hotel.  Defs.' CSF Re: County Authority, Exs. K, L, M.  Plaintiffs' contention that the accidents that took place elsewhere on Lot 29 have no bearing on the safety of the pre-2007 trail fronting Lot 8 is absurd.  It was both reasonable and prudent for the County to take

---

[15]  The Court conducted a site visit on June 14, 2010.  See Doc. No. 126.

precautionary measures to prevent further injuries and fatalities from occurring along the shoreline.  The relocation of the trail was justifiably and appropriately based on safety concerns, whether or not Plaintiffs deem such safety concerns to be valid.

Dr. Kwong's report does not undermine the propriety of the County's 2003 recommendation and 2007 mandate to relocate the trail inland.  First, as already noted, the evidence clearly establishes that the County's actions were prompted by safety concerns, a matter he does not, nor could he, dispute.  Second, Dr. Kwong actually observed the very condition along the pre-2007 trail - walking along a rocky drop-off - that concerned the County.  Pls.' CSF, Ex. 29 at 4; Defs.' CSF Re: County Authority, Ex. M ("We have concerns regarding the safety of trail users at that location which involves walking along the edge of a rocky drop-off.").  He did not opine that the pre-2007 trail is safer than the current trail.[16]  Indeed, the fact that the pre-2007 trail presents at least one potential safety hazard, identified by the County and confirmed by Plaintiffs' expert, demonstrates that a valid basis existed for Director Yuen to order Defendants to relocate the trail.

---

[16]  Whether or not a slippage hazard on the current trail presents a greater risk than a fall off of a rocky edge along the pre-2007 trail is not a matter that the Court needs to consider or resolve.

39

Accordingly, Director Yuen properly ordered the relocation of the trail, both under his authority to enforce conditions of the existing permits, which includes effectuation of the Akau settlement, and duty to ensure the safety of the public traveling on the trail across Lot 29.  That Defendants acted at the behest of the County, whose authority has been affirmed, necessarily results in the dismissal of Plaintiffs' Complaint, and moots all of Defendants' claims against the County.

Even assuming, arguendo, that the County lacked the authority to order the relocation of the trail, the Court would deny Plaintiffs' Motion for the reasons below.

III.   CCRs

Plaintiffs argue that Defendants have violated the CCRs by relocating the trail inland.  In dispute is whether Plaintiffs may enforce the CCRs as against Defendants.  Defendants argue that Plaintiffs lack standing to enforce the CCRs against Defendants because Lot 29 is excluded from the CCRs and MKDC is not an "owner" as defined in the CCRs.  Alternatively, Defendants contend that if the Court finds that the CCRs are applicable to Lot 29 and Defendants, Plaintiffs are nevertheless precluded from relying on the CCRs inasmuch as they have not and cannot establish that Defendants have acted in bad faith or with malice, as required by Section 12.10 of the CCRs.

40

Plaintiffs maintain that they are entitled to an injunction under Section 12.5 of the CCRs and that Section 12.5 does not limit the parties against whom they may take action. According to Plaintiffs then, whether MKDC is an "owner" or Lot 29 is covered by the CCRs is irrelevant.  In addition, Plaintiffs posit that Defendants acted in bad faith because they 1) knew about their obligations under Akau; 2) knew Plaintiffs relied on their affirmative representations and on the Akau settlement and CCRs; and 3) ignored or neglected to consider the foregoing and voluntarily relocated trail.  Plaintiffs submit that Defendants' reliance on statements by County officials or employees was not in good faith because Defendants 1) knew that the County was a party to Akau and 2) should have known that the County had no authority to order relocation.

Section 12.5 of the CCRs provides:

> each provision to this Declaration **with respect to an Owner or the Lot of an Owner** shall be enforceable by the Association, by Declarant, or any Owner by a proceeding for a prohibitive or mandatory injunction or by a suit or action to recover damages. . . . Declarant shall have no obligation to enforce any of the provision of this Declaration.

Defs.' RCSF, Ex. 10 (emphasis added).  It is clear, based on a plain reading of this provision, that the CCRs may be enforced only as against **"an Owner or the Lot of an Owner,"** and the **Association, Declarant, or any Owner** may enforce the CCRs.  See

41

id.  Plaintiffs' interpretation - that they may enforce the CCRs and seek an injunction or damages against anyone - is unfounded and unreasonably broad.[17]

Plaintiffs may not enforce the CCRs against Defendants because Defendants are not "owners" and Lot 29 is not subject to the CCRs.  Section 1.24 of the CCRs defines "owner" as "any Person (including the Fee Owner) who is the Record owner of a fee simple interest in any Lot."  See id.  Lot is defined by Section 1.19 as "a portion of the **real property included within The Bluffs** at Mauna Kea which is a legally subdivided lot."  Id. (emphasis added).  Section 1.29 of the CCRs defines "The Bluffs at Mauna Kea" as "all of the land described in Exhibit 'A' attached hereto."  Id.  Exhibit A includes Lots 1-28 and Lots 30-33.  Id.  Thus, although MKDC owns Lot 29 and is defined as the "Fee Owner," it is not the Record owner of the fee simple interest in any Lot.  Lot 29 is not real property included within The Bluffs.  As a result, Defendants do not qualify as "owners" under the CCRs because Lot 29 is clearly excluded from the CCRs. Moreover, Defendants represent, and Plaintiffs do not challenge, that Defendants no longer own any of the Lots subject to the

---

[17]  Plaintiffs note that any ambiguity in the scope of Section 12.2 must be interpreted strongly against MKP.  Pls.' Opp'n Re: County Authority at 18.  The Court assumes that Plaintiffs intended to reference Section 12.5.  There being no ambiguity, the Court need not interpret the provision against MKP as drafter.

CCRs, i.e., Lots 1-28; 30-33.  Defs.' CSF Re: County Authority at ¶¶ 45-46; Pls.' RCSF Re: County Authority at ¶¶ 41-46. Consequently, the CCRs do not authorize Plaintiffs to seek relief against Defendants.  Summary judgment is granted in Defendants' favor and against Plaintiffs.  In view of the Court's determination, it is unnecessary to reach the issue of whether Defendants acted in good faith and without malice pursuant to Section 12.10 of the CCRs.[18]

IV.  <u>Agreement Between Plaintiffs and Defendants Regarding Trail Relocation</u>

Plaintiffs claim that prior to their purchase of Lot 8, Defendants led them to believe that there was only one legal shoreline trail, which was to run along the ocean.  Plaintiffs argue that they entered into the sales contract for Lot 8 in reliance on those assurances and that Defendants have breached the agreement with Plaintiffs that the shoreline trail would remain in its historic location.  Defendants admit that they informed Plaintiffs on several occasions that the trail could be relocated to Easement 3.  Defendants deny having ever represented to Plaintiffs that the trail could never be moved to a location

---

[18]  Section 12.10 provides: "Neither Declarant, the Association, the Board, nor any member, managing agent, officer or employee of any of the same, shall be liable to any party for any action or for any failure to act with respect to any matter if the action taken or failure to act was in good faith and without malice."  Defs.' CSF Re: County Authority, Ex. V at 46.

other than Easement 3.

There is no question that prior to the date the parties entered into the sales contract and before closing on the purchase of Lot 8, Defendants and Plaintiffs engaged in a number of discussions about the proper location of the trail.  However, the Court must decide, in the first instance, whether any agreement existed that prevented Defendants from ever relocating the trail, and if so, whether they breached that agreement when they relocated the trail inland in 2007.  To do so requires a close examination of the communications between the parties.

In a memorandum dated July 10, 1999, and addressed to Jeanne Buboltz, Plaintiffs stated:

> We would want complete assurances that there is only one "legal" trail and that this is the trail that runs closest to the ocean.  To ensure that there is only one trail we would want some sort of scheme implemented that channeled trail-goers along the correct path and that, ideally, made access to other possible routes more difficult. This might involve placing some large boulders in strategic locations, whatever—but we would want to have a very clear understanding of this issue and the steps that would be taken sooner than later to reinforce the Mauna Kea Properties position on these points.
>
> We have two basic objectives regarding house placement, landscaping, grading, etc.  These are privacy and realization of the view potential of the lot.  The primary privacy concern relates to the MKH trail.  Seeing trail-goers "in the distance" is quite alright with us.  What isn't alright would be the feeling that you'd have to invite every trail-goer in for a swim or lunch or whatever.  We would not want a situation where we

felt "on display."
Pls.' CSF, Ex. 14.  Defendants made notations on the memorandum.
With respect to the location of the trail, Defendants noted:
"Trail is in 40' setback 6 ft wide - ct. Decree in Lot 29
anywhere in 40' setback."  Defs.' RCSF, Ex. 11.

On July 17, 1999, Plaintiffs requested a copy of the
File Plan Map referenced in paragraph 12.4(c) of the sales
contract (relating to the six-foot wide pedestrian access
easement).  Id., Ex. 13.  Mr. Stifler provided Plaintiffs with
the File Plan Map, and stated that "[t]he existing 6-foot
easement is shown, although it is my understanding that the
actual easement needs to be 6 feet in width but can be located by
us anywhere within the 40-foot setback from the ocean."[19]  Id.,
Ex. 14.

_____

[19]  Plaintiffs argue that Mr. Stifler had an erroneous
understanding of the Akau settlement that Belt Collins corrected.
In support of their argument, Plaintiffs represent that their
architect, Thomas Bingham, informed Mr. Stifler about his
misunderstanding regarding the location of the shoreline pathway,
citing a September 16, 1999 letter addressed to Mr. Gunderson.
See Pls.' Reply at 3 (quoting Pls.' CSF, Ex. 25).  Plaintiffs
have taken the letter out of context, by omitting the subject of
the discussion, to suit their argument.  Mr. Bingham corrected
Mr. Stifler about the location of the shoreline setback, not the
proper relocation position of the trail.  The letter states: "I
informed [Mr. Stifler] that I believed he was mistaken **about the
location of the shoreline setback, that it is in fact about
midway between the ocean and your property line.**  I also
mentioned to him that I would have Belt Collins clarify this."
Pls.' CSF, Ex. 25 (emphasis added).

Evidently satisfied with the responses they received, and with the apparent understanding that Defendants could move the shoreline trail anywhere within the 40-foot setback from the ocean, Plaintiffs entered into a sales contract for Lot 8 on July 20, 1999. Pls.' CSF at ¶ 34, Ex. 43. Significantly, section 16.4 of the contract provides:

> This Agreement constitutes the entire agreement between Buyer and Seller and supersedes and cancels all prior and contemporaneous negotiations, representations, understandings and agreements, both written and oral, of Buyer and Seller. No variations of this Agreement shall be valid or enforceable unless approved by Seller and Buyer in writing, it being understood that no implied covenant or verbal agreement or representation by or on behalf of Seller or Buyer shall be held to vary the provision hereof, any law or custom notwithstanding. No salesperson, employee or agent of Seller is authorized or empowered to bind Seller to any representation or agreement not expressly set forth herein or in any such addendum.

Id., Ex. 43. Although neither party addressed the issue in their papers, this section cancelled and superseded any representations, understandings and agreements, both written and oral, of the parties made prior to July 20, 1999, as well as those made after, unless the parties agreed, in writing, to make variations to the contract. Id. Thus, to the extent any of the communications/correspondence between Plaintiffs and Defendants or their respective agents could be construed as an agreement or agreements between the parties concerning the legal location of

46

the trail, Plaintiffs' claim fails.

By way of letter dated September 16, 1999, Plaintiffs' architect, Thomas Bingham, queried Anne Mapes of Belt Collins whether the shoreline pathway could be relocated in closer proximity to the shoreline easement.  He noted that the shoreline pathway at that time crossed over portions of Lot 8 and Lot 9. Defs.' RCSF, Ex. 15.  Included with this letter was a Conceptual Grading Plan for Lot 29, along with a proposal relocating the shoreline pathway and adding a natural barrier of lava rock. Id.; see also id., Ex. 16.  The proposed shoreline path was closer to the shoreline than the centerline of the shoreline easement and the proposed lava rock natural barrier ran along and through the centerline of the shoreline easement, and at one point, closer to the shoreline than the centerline.  Id., Ex. 16. After discussing these and other issues with Ms. Mapes, Mr. Bingham reported to Plaintiffs on September 29, 1999, that the "Pathway [trail] should be moved from its present location to the line identified as 'centerline of easement for shoreline path' - this is located within the shoreline setback and close to the actual shore."  Pls.' CSF, Ex. 16; Defs.' RCSF, Ex. 17.

In a letter dated October 14, 1999, James Bell of Belt Collins informed Mr. Bingham of the following:

> In response to your letter of September 16 and the
> attached drawings, several issues require
> clarification.

47

1.   The interpretation of the 40-foot setback
     from the confirmed shoreline is incorrect.
     The setback is in the mauka direction from
     the shoreline confirmed by DLNR on March 12,
     1991 as indicated on the attached sketch.
     Mauka, in this situation, means to the east
     or inland.  Therefore, as shown on the
     attached sketch, most of Lot 29 is within the
     40-foot setback, leaving very little of Lot
     29 that is available for grading, as grading
     is not allowed in the 40-foot setback.

2.   The existing shoreline trail has an easement
     also shown on the attached drawing.  The
     center line of the easement is shown with a
     three-foot easement on either side of the
     center line for a six-foot total easement.
     It's possible that the portion of the trail
     across the subject property is not the
     official trail.  It is our understanding that
     the trail should be along the legally defined
     easement.  If it is not, it can be relocated
     to the legal easement.  The legal alignment
     is entirely within the 40-foot setback where
     it borders Lots 8 and 9.

Pls.' CSF, Ex. 17; Defs.' RCSF, Ex. 18.  Mr. Bell further stated:

"it's permissible to relocate the trail from portions of Lots 8

and 9 to the shoreline easement area, especially since the

description of the existing easement is within the 40-foot

setback so long as this results in a safe walkway."  Id.  With

respect to the use of lava rocks, Mr. Bell explained that

It's permissible to use lava rocks as a barrier in
the Lot 29 area so long as it's outside of the 40-
foot setback.  As mentioned earlier, we do not
have a variance to grade within the setback.  Any
addition of lava rocks will be considered grading.
Also, this would have to be done by hand as it's
not permissible to use large equipment in the
setback area.

48

Id.  The foregoing demonstrates that Plaintiffs knew, shortly
before closing and the October 15, 1999 due diligence deadline,
that 1) the then-shoreline trail that cut through Lots 8 and 9
could be moved to Easement 3, as long as a safe walkway resulted,
and 2) the use of lava rocks was only permissible in Lot 29
outside the 40-foot setback.  It is therefore undisputed that
prior to the conveyance of Lot 8, both parties understood, or
should have understood, that if the trail traversing Lots 8 and 9
was to be moved, it should be moved to Easement 3.[20]

On October 29, 1999,  MKDC conveyed Lot 8 to Plaintiffs
by Limited Warranty Deed.  Pls.' CSF, Ex. 18.

Based on the evidence before the Court, there is no
agreement upon which Plaintiffs should have or could have relied.
First, all prior and contemporaneous negotiations,
representations, understandings and agreements, both written and
oral, of Defendants and Plaintiffs, prior to July 20, 1999, were
cancelled and superseded by the sales contract.  Second, all
communications subsequent to July 20, 1999, and prior to the
October 29, 1999 closing, reflect that discussions about the
relocation of the trail took place, but not that the parties
reached an agreement, or made any promises, as no written
agreements demonstrate the parties' intention to vary the terms

---

[20]  It is undisputed that the sales contract referenced
Easement 3 and Plaintiffs purchased Lot 8 subject to the CCRs.

of the contract.  If anything, the discussions reinforced that Easement 3 was the proper location of the trail.  Given section 16.4 of the sales contract, it is axiomatic that if the parties intended for any representations concerning the relocation of the trail, or any assurances regarding the future location the trail, to become part of the sales contract, that said terms would have and must have been expressly incorporated into the contract, in order to be binding on the parties.  In the absence of the same, there is no genuine issue of material fact that Defendants did not promise that the trail could never be moved, nor did the parties enter into an agreement concerning the relocation of the trail.[21]  Accordingly, Plaintiffs' claim fails as a matter of law.

V.   <u>Unclean Hands</u>

    Had the Court not determined that Director Yuen properly ordered the relocation of the trail, Plaintiffs' Motion would nevertheless be denied because there exists a genuine issue of material fact about whether Plaintiffs acted with "unclean hands."  Defendants raise the affirmative defense of "unclean hands" as a bar to Plaintiffs' claims, or at minimum, to create a genuine issue of material fact sufficient to deny Plaintiffs'

---

        [21]  If an agreement existed, the Court is unclear how Plaintiffs' 2000 relocation of the trail to a position makai of Easement 3 would not likewise violate said agreement that the trail should be relocated to Easement 3.

Motion.   Plaintiffs do not directly address this argument, but submit that Defendants consented to the August 2000 restoration of the shoreline trail and knew, by September 2000, that the original trail had been restored.

The Hawaii Supreme Court has described the doctrine of "unclean hands," or "he who comes into equity must come with clean hands," as follows:

> Broad as the principle is in its operation, it must still be taken with reasonable limitations; it does not apply to every unconscientious act or inequitable conduct on the part of a plaintiff. The maxim, considered as a general rule controlling the administration of equitable relief in particular controversies, is confined to misconduct in regard to, or at all events connected with, the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the two parties, and arising out of the transaction; it does not extend to any misconduct, however gross, which is unconnected with the matter in litigation, and with which the opposite party has no concern. When a court of equity is appealed to for relief it will not go outside of the subject matter of the controversy, and make its interference to depend upon the character and conduct of the moving party in no way affecting the equitable right which he asserts against the defendant, or the relief which he demands.

7's Enters., Inc. v. Del Rosario, 111 Hawai'i 484, 494-95, 143 P.3d 23, 33-34 (2006) (quoting Woodward v. Auyong, 33 Haw. 810, 811-12 (Haw. Terr. 1936)).   Under the doctrine, a party may not profit by his own misconduct.   Shinn v. Edwin Yee, Ltd., 57 Haw. 215, 231, 553 P.2d 733, 744 (1976) (internal citation omitted).

51

It "will not be invoked when to do so would work injustice and wrong." Id.  In other words, the doctrine "closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." AIG Hawaii Ins. Co., Inc. v. State Farm Ins. Cos., 119 Hawai'i 244, 195 P.3d 711 (Table), 2008 WL 4539335, *8 (Haw. Ct. App. Oct. 8, 2008) (citing ABF Freight Sys., Inc. v. N.L.R.B., 510 U.S. 317, 329-30 (1994)). To assert a claim, one must show some 1) fraudulent or dishonest practice; 2) attempted abuse of process; or 3) conduct evidently contrary to equity and good conscience.  Id. (citing Lucas v. American Hawaiian Eng'g & Constr. Co., 16 Haw. 80, 85 (1904)). It is within the court's discretion to invoke equitable relief such as the "unclean hands" doctrine.  7's Enters., 111 Hawai'i at 489, 143 P.3d at 28 (citing Ueoka v. Szymanski, 107 Hawai'i 386, 393, 114 P.3d 892, 899 (2005)).

Defendants specifically allege that Plaintiffs directed Metzler Contracting to relocate the trail outside the confines of Easement 3 without Defendants' or the County's approval, in violation of the CCRs.[22]  Defendants assert that Plaintiffs knew

---

[22]  Section 6.6 of the CCRs provides:

> Portions of The Bluffs and areas adjacent to The Bluffs are subject to certain archeological restrictions and requirements, including archeological setbacks, preservation and

of their obligations as "Owners" under the CCRs and that

Defendants consistently told Plaintiffs that the trail could be

relocated to Easement 3.

Plaintiffs do not dispute that they moved the trail in

_____

maintenance plans, pedestrian access easements,
access agreements and other easements, all as more
fully described in Section 7.6 hereof.  Each Owner
shall comply with all requirements and
restrictions of the Preservation Plan, the
Easement Agreement and the Settlement Agreement
which may be applicable to such Owner, and shall
not take or permit any action which is
inconsistent with the obligations of Declarant,
Fee Owner or their Affiliates under the
Preservation Plan, Easement Agreement or
Settlement Agreement, or otherwise in connection
with the Archeological Sites or Pedestrian
Easement, or their obligations with respect
thereto, all as described in Section 7.6 hereof.

Defs.' RCSF, Ex. 10 at 25.  Section 7.6 describes the relevant
easements as

(a) Easements 1, 2, 3 . . ., as shown on File Plan
No. 2196 . . . .

. . . .

(c)  the six foot wide pedestrian access easement
(the "Pedestrian Easement") located within and/or
adjacent to The Bluffs, as shown on File Plan No.
2196, and as described in that certain Settlement
Agreement dated July 31, 1981, filed in the Civil
Nos. 3072, 4961 and 5935, Circuit Court of the
Third Circuit, State of Hawaii, on August 3, 1981
(the "Settlement Agreement").

Id., Ex. 10 at 27-28.

2000,[23] but represent that they did so with Defendants' consent. Plaintiffs both attest to the fact that on July 31, 2000, prior to the commencement of trail work, they walked the fisherman's trail with Bill Mielcke of Mauna Kea, who confirmed that the fisherman's trail was the appropriate or true trail, and who authorized the clean up and restoration of said trail, along with the elimination of the informal alternate paths running through The Bluffs residential lots. Pls.' Reply, Decl. of Robert V. Gunderson, Jr. at ¶ 11; id., Decl. of Anne Gunderson at ¶ 3. Although Plaintiffs ultimately paid for the clean up and restoration, it was their understanding that Defendants would cover the expenses. Id., Mr. Gunderson Decl. at ¶ 14; id., Ms. Gunderson Decl. at ¶ 3. In a letter[24] addressed to Mr. Mielcke and Mr. Stifler, Ms. Gunderson wrote:

> Enclosed you will find a copy of a bill from Metzler Construction Co. for their services in moving the Mauna Kea/Hapuna Beach trail off our property, Lot 8. As you both will recall, on numerous occasions, before and after our purchase of Lot 8, I continually asked you when you would be moving the trail off our property. This was a very important issue for us in deciding to purchase the property. As you know the trail was originally located on Lot 29, not on Lot 8. A new path had been worn on many of the lots, including

---

[23] Plaintiffs contemplated subsequent trail relocations in 2001 and 2002, but did not go through with them. Defs.' RCSF, Exs. 5-9; Decl. of Keith Wallace at ¶¶ 9-15.

[24] According to Ms. Gunderson, the letter was written on or about October 25, 2000. Pls.' Reply, Ms. Gunderson Decl. at ¶ 3.

lots 8 and 9, but [sic] the many guests at the
hotels who walk/run the trail.  I was told
repeatedly by both of you that Mauna Kea would
indeed move the trail.  I specifically had a
discussion with Bill about this because I wanted
the trail moved before we closed on the property.
Since this would not be done prior to closing,
Bill told me that he would have the trail moved on
the relevant properties as each homeowner began
their building.  He said this would allow each
homeowner to place the trail where the homeowner
wanted it.  Revisiting this issue with Bill when
we were planning for the grading of our property,
he asked that our contractor, Metzler Construction
do the work since they would be there doing our
work.  He also stated that it would be necessary
for him to approve the location of the trail.  With
this in mind, Bill met Bob and I, Jim Olson and
Kevin Kudo-King of Olson Sundberg Architects, and
John Metzler and Brian Swift of Metzler
Construction on Lot 8 on July 31st and approved
the placement of the trail.  In fact, Kevin
obtained the original plan for the trail from the
Planning Commission and Metzler Contracting was
able to place the trail back to its original
placement.

Pls.' Reply, Ex. 66.  Defendants maintain that they neither

approved nor had knowledge of the trail relocation that took

place in August to September 2000.  However, a September 1, 2000

email from Metzler Contracting to Plaintiffs states:

I spoke with Bill Meilke [sic] yesterday about the
trail.  He said that he did not intend to pay for
the work there, but that he has previously
indicated that you were welcome to realign the
trail if you chose to do so.  I told him that you
expected Mauna Kea Properties to pay for the
relocation of the trail, but he simply said that
his intent did not match your expectation.  He
also mentioned that he wanted to get a letter of
credit or a bond from you as soon as possible,
since we have begun work.

55

Defs.' RCSF, Ex. 4.  The owners of Lot 9 also noted, in a letter
dated September 12, 2000, that the "nature trail had been
relocated to its original course."  Id., Ex. 25.  Hence,
at very least, Defendants appear to have had knowledge of
Plaintiffs' trail work, either while it was taking place, or
shortly thereafter.  Whether Defendants approved of Plaintiffs'
relocation of the trail to a position makai of Easement 3,
however, is far less clear.  With respect to this issue, there
exists a genuine issue of material fact.

        In addition to the discussions about the proper
location of the trail that took place prior to the conveyance of
Lot 8, Plaintiffs, Defendants, and/or their respective agents
exchanged communications between December 1999, and August 2000,
concerning the design and construction of Plaintiffs' proposed
residence, some of which included discussions about the
relocation of the trail that crossed Lot 8.  Id., Exs. 19-24.
Significantly, while the communications repeatedly affirm that
Easement 3 is the proper location of the trail, there is no
communication reflecting that Defendants formally approved or
authorized the 2000 move of the trail to a location off of
Easement 3.  Plaintiffs' representation that Mr. Mielcke gave
onsite approval on July 31, 2000, is the only affirmative

evidence of an approval currently before the Court.[25]   Inasmuch
as the evidence demonstrates that Defendants consistently
maintained the position that a trail move by Plaintiffs should
result in a relocation to Easement 3, but Plaintiffs claim that
they obtained verbal approval from Mr. Mielcke to move the trail
to a location makai of Easement 3, there is a genuine issue of
material fact about whether Defendants authorized Plaintiffs'
2000 relocation of the trail.

Plaintiffs also attempt to validate their relocation of
the trail, arguing that the metes and bounds description set
forth in the Akau settlement is a scrivener's error.  Plaintiffs
posit that the metes and bounds description was intended to
correspond to the original/historic location of the trail and
note that if the description was followed, an impassable trail
results.[26]  "In contract law, a scrivener's error, like a mutual

---

[25]  It is worth noting that Plaintiffs raised this argument
for the first time in their Reply, supported only by their
declarations.

[26]  The fact that the metes and bounds descriptions results
in an impassable trail does not necessarily compel the conclusion
that the description is erroneous.  The evidence before the Court
demonstrates that a trail has historically existed along parts of
Lot 29, but was not evident in all areas.  In such instances,
Defendants would clear and make traversable a path.  Pls.' RCSF
Re: Trail, Ex. 56.  Such being the case, it logically follows
that an impassable trail that results from the metes and bounds
description is not indicative of an error, but rather, that the
parties to the Akau settlement desired a particular routing.

mistake, occurs when the intention of the parties is identical at the time of the transaction but the written agreement does not express that intention because of that error; this permits a court acting in equity to reform an agreement."  27 Williston on Contracts § 70:93 (4th ed.).  Plaintiffs have not presented any evidence that establishes, or even suggests, that the metes and bounds description referenced in the Akau settlement does not accurately express the parties' intention.

Plaintiffs rely on the opinions of one of their experts, Ryan Suzuki, a land surveyor employed by R.M. Towill Corporation, to support their theory.  Pls.' CSF, Decl. of Ryan Suzuki at ¶ 8 (The description of Easement 3 "does not necessarily follow the precise location of the physical shoreline trail on the ground as it existed at the time, and so there may have been differences between the survey and the trail").  Mr. Suzuki's statement does not support their theory, nor could any of his opinions.  He is not in a position to speculate about the intention of the parties to the Akau settlement.  Neither is Plaintiffs' reliance on the Environmental Impact Assessment ("EIA") availing.  It states that "[a]n existing trail survives in certain portions of the Shoreline Setback Area, and the access will follow the route of that trail whenever possible, except as later noted."  Defs.' CSF Re: County Authority, Ex. E at 2.  This EIA was prepared in March 1982, almost a year after the Akau

settlement was entered into.  Moreover, it does not state that a trail existed in the pre-2007 location fronting Lot 8, but rather, that an existing trail **survived in <u>certain portions</u>**. Thus, there is an absence of evidence to establish that the parties to the Akau settlement intended for Easement 3 to occupy a location other than that noted in the metes and bounds description.  Without establishing that the metes and bounds description does not express the identical intention of the parties at the time they entered into the Akau settlement, Plaintiffs cannot prove that the purported discrepancy between the metes and bounds description and the then location of the trail is a scrivener's error.

Even assuming that there was an error, and such error constituted a scrivener's error, a genuine issue of material fact would nevertheless exist with respect to the "historic" location of the trail, which is far from established.  Plaintiffs have submitted a number of aerial photographs purporting to show that the trail existed in the same location along the oceanfront from 1977 to 2007.  Pls.' CSF, Exs. 36-40, 53-55.  These exhibits lack detail and do not show any trail.  Interestingly, the one aerial photograph, taken in 1992, that clearly presents a trail shows the trail fronting Lot 8 in a location that is possibly even further inland than its current position.  Pls.' Reply, Ex. 68. This significantly undermines Plaintiffs' contention that because

Easement 3 is supposed to be the trail's historic location, their relocation in 2000 was proper.  The fact that the trail, and even multiple trails, crossed over Lot 8 prior to the 2000 relocation, demonstrates that the location of a single "historic" trail has not been definitively established.  See, e.g., Defs. RCSF, Ex. 66; Pls.' CSF, Ex. 14 ("On Lot 8 there seem to be several 'paths' – at least along certain portions of the lot.").

To further substantiate their claims, Plaintiffs cite a report created by Paul Rosendahl, Ph.D. in June 1982 entitled "Identification of Historic and Prehistoric Trails Located Within Mauna Kea Properties, Inc. Development Properties at Kawaihae 2nd and Ouli South Kohala District, Island of Hawaii," as well as the Akau case.  Pls.' CSF, Ex. 5, 22.  Referring to the trail running along Lot 29, the report states:  "The trail usually appears as a narrow, worn depression, less than one meter wide, and without defining alignments along its edges.  It seems probable that the route of this trail follows along that of a much older, probably pre-historic, coastal trail that extended between Kawaihae and Puako."  Id., Ex. 5.  The Akau court explained that "[t]wo of the trails in issue run roughly parallel to the beach between the two parks.  They have existed since before the turn of this century.  The Kamehameha Trail is at most points very close to the water and at others about 100 yards away."  Akau, 65 Haw. at 385, 652 P.2d at 1132.  At most, the foregoing create an issue of fact

about the trail's historic location.[27]  Indeed, these
descriptions do not specify that the *portion of the trail
fronting Lot 8* is positioned on or immediately adjacent to the
shoreline, as Plaintiffs would have the Court believe.[28]  The
evidence before the Court even indicates that although a historic
trail exists along portions of MKP's shoreline, there were areas
where no trail was evident.  Pls.' RCSF Re: Trail, Ex. 56.

        Defendants also argue that Plaintiffs cannot claim that
the coconut trees Plaintiffs planted on Lot 29, purely for
aesthetic reasons, now prevent relocation of the trail.
According to Defendants, Plaintiffs have failed to maintain the
trees, and have not responded to a request from Defendants to
terminate the agreement.  Id., Exs. 51-54, 70.  Plaintiffs
contend that they would not have agreed to indemnify MKDC if not
for Defendants' representation concerning the location of the
trail.  The tree agreement could not have the effect of
preventing the relocation of the trail.[29]  If anything, whether

---

[27]  The Court notes that even in its present location, the
trail is still a shoreline, oceanfront trail.

[28]  Plaintiffs argue that the ancient trail hugged the
shoreline because it was used for fishing.  Pls.' RCSF Re: County
Authority, Ex. 65 at A-162.  If anything, the evidence shows that
people used to fish between Kawaihae and Puako, but not that
people used an ancient shoreline trail directly fronting Lot 8 to
fish.  Id.

[29]  Because the agreement may be terminated at any time by
agreement of Plaintiffs and MKDC, Defs.' RCSF, Ex. 39 at ¶ 6, and

or not Plaintiffs have abided by the agreement simply creates further issues of fact about whether Plaintiffs acted with "unclean hands."

It accordingly follows that genuine issues of material fact exist that preclude the Court from ascertaining whether Plaintiffs acted with "unclean hands."  If Plaintiffs indeed improperly relocated the trail, they could not prevail on their claims, as their conduct would be equally, if not more, violative of the various provisions upon which they base their claims against Defendants.[30]

## VI.   National Trails System Act

Both Plaintiffs and Defendants move for summary judgment under the NTSA.  Plaintiffs take the position that Defendants violated the NTSA by relocating the trail because the NTSA required federal approval to do so.  Plaintiffs also believe

---

Defendants have offered to terminate the agreement, Plaintiffs cannot legitimately argue that they would be subjected to additional liability as a result of the trail relocation.

[30]   For example:  1) assuming the NTSA applies and Defendants' 2007 relocation of the trail required federal approval, so would Plaintiffs' 2000 relocation of the trail; 2) if Defendants violated the CCRs and Akau settlement by moving the trail to a location other than Easement 3, Plaintiffs' relocation of the trail to a location makai of Easement 3 would likewise violate the CCRs; 3) assuming the parties entered into an agreement that the trail could and would not be moved off of Easement 3, Plaintiffs' relocation would violate said agreement; and 4) if MKDC violated SSV Permit No. 614 by relocating the trail because the permit required the trail to conform to the Akau agreement, the 2000 relocation would violate the same.

that the NTSA preempts County authority.[31]

On the other hand, Defendants contend that trail is not subject to the NTSA because 1) the portion of the trail on Lot 29 is not a federally protected segment of the Ala Kahakai National Historic Trail and 2) there is no written agreement between MKDC, as private landowner, and any federal, state or local government to evidence voluntary participation in the Ala Kahakai National Historic Trail.

The Ala Kahakai trail has been established as a national historic trail under 16 U.S.C. § 1244(a)(22), and is described as:

> a 175 mile long trail extending from 'Upolu Point on the north tip of Hawaii Island down the west coast of the Island around Ka Lae to the east boundary of Hawaii Volcanoes National Park at the ancient shoreline temple known as "Waha'ula", as generally depicted on the map entitled "Ala Kahakai Trail", contained in the report prepared pursuant to subsection (b) of this section entitled "Ala Kahakai National Trail Study and Environmental Impact Statement", dated January 1998.

16 U.S.C. § 1244(a)(22)(A).  Unless an owner of land or interest

---

[31]  Plaintiffs have raised this bald, conclusory argument without citing any supporting authority.  "The preemption doctrine is a corollary of the Supremacy Clause of the United States Constitution, and in general provides that any municipal law that is inconsistent with federal law is without effect." Friends of the East Lake Sammamish Trail v. City of Sammamish, 361 F. Supp. 2d 1260, 1273 (W.D. Wash. 2005) (footnote omitted). For the reasons to be discussed, the segment of trail at issue is not "federally protected," nor governed by federal law, and thus, relocation of the trail was not inconsistent with federal law.

in land consents, "[n]o land or interest in land outside the exterior boundaries of any federally administered area may be acquired by the United States for the trail." See id. § 1244(a)(22)(D). "Only those selected land . . . components of an historic trail which are on federally owned lands and which meet the national historic trail criteria established in this chapter are included as Federal protection components of a national historic trail." See id. § 1242(a)(3). In addition, other lands may be certified "as protected segments of an historic trail upon application from State or local governmental agencies or private interests involved if such segments meet the national historic trail criteria established in this chapter and such criteria supplementary thereto." See id. To acquire lands necessary for a designated historic trail, state or local governments, or federal authorities, may either enter into written cooperative agreements for rights-of-way with landowners or acquire the lands. See id. § 1246(e);[32] Preseault v.

---

[32] The full text of § 1246(e) provides:

> Where the lands included in a national scenic or national historic trail right-of-way are outside of the exterior boundaries of federally administered areas, the Secretary charged with the administration of such trail shall encourage the States or local governments involved (1) to enter into written cooperative agreements with landowners, private organizations, and individuals to provide the necessary trail right-of-way, or (2) to acquire such lands or interests therein to

Interstate Commerce Comm'n, 494 U.S. 1, 6 n.1 (1990).

Plaintiffs argue that the NTSA applies to the entire trail, and not only federally protected segments.  Yet they assert that Defendants' agreement to participate in the trail would only be necessary if the State of Hawaii did not already have an interest in and/or right-of-way over the trail on Lot 29. It is Plaintiffs' position that 1) the Akau settlement satisfies

---

be utilized as segments of the national scenic or national historic trail: Provided, That if the State or local governments fail to enter into such written cooperative agreements or to acquire such lands or interests therein after notice of the selection of the right-of-way is published, the appropriate Secretary may (i) enter into such agreements with landowners, States, local governments, private organizations, and individuals for the use of lands for trail purposes, or (ii) acquire private lands or interests therein by donation, purchase with donated or appropriated funds or exchange in accordance with the provisions of subsection (f) of this section: Provided further, That the appropriate Secretary may acquire lands or interests therein from local governments or governmental corporations with the consent of such entities. The lands involved in such rights-of-way should be acquired in fee, if other methods of public control are not sufficient to assure their use for the purpose for which they are acquired: Provided, That if the Secretary charged with the administration of such trail permanently relocates the right-of-way and disposes of all title or interest in the land, the original owner, or his heirs or assigns, shall be offered, by notice given at the former owner's last known address, the right of first refusal at the fair market price.

16 U.S.C. § 1246(e).

the cooperative agreement requirement set forth in §1246(e) and

2) the State has an interest in the trail through HRS § 264-1.

Defendants challenge the applicability of the NTSA to

non-federally protected segments, arguing that participation in

the NTSA is voluntary.  Defendants dispute Plaintiffs' claim that

the State has an ownership interest in the trail, but contend

that regardless of whether the State has an interest in the

trail, there is no evidence demonstrating that the State has

applied to have the segment of trail at issue designated as a

federally protected component of the national historic trail, as

required under § 1242(a)(3).

Based on a plain reading of the NTSA, it appears that

affirmative steps must be taken for a party to be subject to the

strictures of the NTSA.  Federal laws do not automatically apply

to landowners' property.  The Ala Kahakai National Historic Trail

Comprehensive Management Plan ("CMP"), published in May 2009,

provides:

> If a **proven state-owned trail that is eligible for
> the Ala Kahakai NHT passes over private land,
> federal laws will apply only to the trail right-
> of-way and agreed upon adjacent areas,** and not to
> the rest of the landowner's property.  State and
> county laws that apply to landowners will continue
> to apply.

Defs.' CSF Re: Trail, Ex. C (emphasis added).  Thus, federal laws

apply only to the right-of-way and agreed upon adjacent areas of

a proven state-owned trail eligible for the Ala Kahakai National

Historic Trail.  Conversely, if it is not proven that the State

owns or if the State does not own an eligible portion of trail,

federal laws have no application to a landowner's property.

In the present case, whether Defendants or the State

own the trail[33] is irrelevant, as neither have taken affirmative

---

[33] Even Plaintiffs concede that Defendants' agreement to
participate in the Ala Kahakai National Historic Trail would be
necessary if the State did not have an interest/right-of-way in
the subject portion of the trail.  Pls.' Opp'n Re: Trail at 7.
The Court does not agree, however, nor does the relevant
authority establish, that state ownership/interest in a trail
automatically results in the segment of trail becoming a
federally protected component.  The mere existence of a
cooperative agreement as contemplated by § 1246(e) is also
insufficient, by itself, to subject a portion of the trail to the
NTSA.  Section 1246(e) merely sets forth mechanisms for acquiring
lands necessary for a designated trail, and does not dispense of
the certification requirements in § 1242(a)(3).

Without conducting a detailed analysis, the Court notes that
the Akau settlement, which predated the designation of the Ala
Kahakai National Historic Trail by nineteen years, does not
constitute a cooperative agreement to participate in the Ala
Kahakai National Historic Trail.  This is not to say that the
State does not have an interest/right-of-way in the trail by way
of the Akau settlement.  However, as articulated in the CMP,
federal law only applies if there is a proven state **owned** trail
that is eligible for the Ala Kahakai National Historic Trail.

The Memorandum of Understanding Between the National Park
Service, United States Department of the Interior, State of
Hawaii, and the County of Hawaii for the Implementation,
Management, Protection and Public Use of Ala Kahakai National
Historic Trail ("MOU") is also clearly not a "cooperative
agreement" as the term is used in § 1246(e), for either the State
or Defendants to provide a right-of-way.  Defs.' CSF Re: Trail,
Ex. E.  Rather, it details the responsibilities of the various
governmental entities and expresses an intention to collaborate
in an effort to manage the Ala Kahakai National Historic Trail.
Id.

steps to subject the portion of the trail at issue to the NTSA.
It is undisputed that neither have applied, pursuant to 16 U.S.C.
§ 1242(a)(3), to have the trail certified as a federal protection
component.  Neither is there evidence to demonstrate that the
land meets national historic trail criteria and/or other
applicable criteria.  Only federally owned lands meeting national
historic trail criteria are federal protection components; other
lands may be certified as such upon application from State or
local governmental agencies or private interests involved if the
lands meet certain criteria.  16 U.S.C. § 1242(a)(3).  Thus,
unless further steps are taken to incorporate the trail into the
Ala Kahakai National Historic Trail, the segment of trail at
issue is not federally protected and federal law does not
supersede the County's authority to order relocation of the
trail.

---

    Finally, Plaintiffs have not provided any evidence that the
State claims ownership over the portion of the trail on Lot 29
pursuant to HRS § 264-1(b).  See Haw. Rev. Stat. § 264-1(b) ("All
trails, and other nonvehicular rights-of-ways in the State
declared to be public rights-of-ways by the Highways Act of 1892,
or opened, laid out, or built by the government or otherwise
created or vested as nonvehicular public rights-of-way at any
time thereafter, or in the future, are declared to be public
trails. A public trail is under the jurisdiction of the state
board of land and natural resources unless it was created by or
dedicated to a particular county, in which case it shall be under
the jurisdiction of that county.").

The CMP specifies that "[l]andowner participation in the Ala Kahakai NHT is voluntary, though encouraged, and requires an agreement with the NPS.  Land will be acquired, if at all, only from willing sellers and donors."  Defs.' CSF Re: Trail, Ex. C.  The Ala Kahakai Abbreviated Final Environmental Impact Statement and Comprehensive Management Plan for the Ala Kahakai National Historic Trail ("EIS/CMP"), published in October 2008, similarly provides:

> **Agreements for incorporating a trail segment into the Ala Kahakai NHT are always between the NPS and the landowners or land manager** (p. 50) and adjacent landowners are included in planning and management teams (p. 51).  As the plan states, trail segments will be included in the Ala Kahakai NHT incrementally when there is the staff, funding, and community commitment sufficient to develop and manage each segment according to its resource needs.

Id., Ex. D (emphasis added).  The CMP and EIS/CMP clearly establish that incorporation of a trail segment into the Ala Kahakai National Historic Trail requires an agreement between NPS and the landowner.  Plaintiffs have not presented any evidence of an agreement between either Defendants and National Parks Service and/or the State and National Parks Service, concerning the incorporation of the trail segment into the Ala Kahakai National Historic Trail.  In the absence of 1) any agreement between the State or Defendants and NPS or 2) an application, pursuant to 16 U.S.C. § 1242(a)(3), to have the land certified as a federal

protection component and a determination that the land meets national historic trail criteria and/or other applicable criteria, the Court finds that to the extent Plaintiffs rely on the NTSA, their claim fails as a matter of law.  Summary judgment is granted in Defendants' favor.

Because Plaintiffs' NTSA claim fails, the Court need not address whether the relocation of the trail violated § 1246(b).[34]

VII.   <u>Hawaii Revised Statutes § 7-1</u>

Plaintiffs argue that Defendants' relocation (or

---

[34]   Section 1246(b) provides:

> After publication of notice of the availability of appropriate maps or descriptions in the Federal Register, the Secretary charged with the administration of a national scenic or national historic trail may relocate segments of a national scenic or national historic trail right-of-way, with the concurrence of the head of the Federal agency having jurisdiction over the lands involved, upon a determination that: (i) such a relocation is necessary to preserve the purposes for which the trail was established, or (ii) the relocation is necessary to promote a sound land management program in accordance with established multiple-use principles: Provided, That a substantial relocation of the rights-of-way for such trail shall be by Act of Congress.

16 U.S.C. § 1246(b).  Curiously, if Plaintiffs challenge the relocation of the trail in 2007 under this provision, it is unclear how Plaintiffs' relocation of the trail in 2000, whether Defendants' consented or not, would not similarly violate § 1246(b), as Plaintiffs clearly did not obtain federal approval to do so.

blockage) of the trail violates HRS § 7-1.  Defendants counter

that Plaintiffs never asserted this claim in the Complaint.  Even

if Plaintiffs had, Defendants posit that Plaintiffs lack standing

to assert such a claim as non-residents whose property is not

kuleana land.

Defendants are correct that Plaintiffs did not allege,

in the Complaint, that Defendants' actions violated HRS § 7-1.

By failing to allege a violation of HRS § 7-1 in the Complaint,

Plaintiffs have waived the claim.  They may not use their Motion

to belatedly expand their Complaint.  Brass v. County of Los

Angeles, 328 F.3d 1192, 1197 (9th Cir. 2003).  Accordingly, the

Court finds that Plaintiffs have waived the HRS § 7-1 claim.

Even if Plaintiffs had properly raised this claim in

their Complaint, the claim would fail as a matter of law.  HRS

§ 7-1 provides:

> Where the landlords have obtained, or may
> hereafter obtain, allodial titles to their lands,
> the people on each of their lands shall not be
> deprived of the right to take firewood,
> house-timber, aho cord, thatch, or ki leaf, from
> the land on which they live, for their own private
> use, but they shall not have a right to take such
> articles to sell for profit. The people shall also
> have a right to drinking water, and running water,
> and the right of way. The springs of water,
> running water, and roads shall be free to all, on
> all lands granted in fee simple; provided that
> this shall not be applicable to wells and
> watercourses, which individuals have made for
> their own use.

Haw. Rev. Stat. § 7-1.  Section 7-1 does not apply to non-

71

residents of the State of Hawaii.  <u>Daly v. Harris</u>, 215 F. Supp.

2d 1098, 1120 (D. Haw. 2002) (non-residents of Hawaii are not

entitled to the rights afforded by HRS § 7-1).  Plaintiffs

attempt to distinguish <u>Daly v. Harris</u> on the grounds that the

court did not decide whether or to what extent non-resident

owners of land in an ahupua'a have judicially recognized rights-

of-way.  The Court acknowledges the distinction between the

plaintiffs in <u>Daly</u>, non-resident visitors, versus Plaintiffs, who

are non-resident property owners.  However, Plaintiffs have not

cited any authority that supports their position that non-

resident landowners can and were meant to benefit from HRS § 7-1.

Indeed, the historical context of HRS § 7-1 would suggest

otherwise.  In reaching its determination that the protections of

HRS § 7-1 did not extend to non-residents, the <u>Daly</u> court

carefully considered Hawaii state court precedent, including

<u>Public Access Shoreline Hawaii v. Hawaii County Planning</u>

<u>Commission</u>, 79 Hawai'i 425, 903 P.2d 1246 (1995) ("PASH").  <u>Id.</u>

at 1120-21.  Plaintiffs rely on PASH for the following

propositions:  1) HRS § 7-1 gives not only residents of the

ahupua'a the right to use historic Hawaiian trails for the

exercise of traditional custom and practice, but also the general

public[35] and 2) one need not be "native Hawaiian" to bring claims

---

[35]  Plaintiffs on one hand appear to argue that they are
entitled to use the trail, and Defendants' actions are preventing

under HRS § 7-1.  These points have no bearing on the impediment Plaintiffs face here – they are not residents of Hawaii.[36]

Plaintiffs also rely on Bremer v. Weeks, 104 Hawai'i 43, 85 P.3d 150 (2004), to argue that they are abutting landowners entitled to use the trail.  Bremer is entirely distinguishable.  First, and most significantly, Bremer does not authorize non-resident property owners to rely on HRS § 7-1.  In fact, the Bremer court never addressed the residency requirement.  Second, the issue in Bremer was whether, pursuant to HRS § 7-1, the plaintiff was entitled to a right-of-way based on necessity and/or historic/ancient usage, without which, her property would be landlocked.  Defendants' relocation of the trail does not prevent Plaintiffs or the general public from freely traveling along the shoreline between Hapuna Beach Prince Hotel and Mauna Kea Beach Hotel, and the corresponding beaches.  Passage along Lot 29 is not obstructed; the section of trail fronting Lot 8 merely cuts inland of where it did prior to 2007.  Certainly, no

them from doing so, in violation of HRS § 7-1.  Pls.' Reply at 12 ("Gundersons are abutting landowners entitled to use the trail.").  On the other hand, Plaintiffs argue that Defendants have prevented trail-goers from activities such as fishing and other oceanic pursuits by relocating the trail.  Pls.' Mem. in Supp. of Mot. at 18.  It is unclear whether they are arguing on behalf of themselves, or on behalf of the public.  Their claim fails regardless of which argument they pursue.

[36]  It is undisputed that Plaintiffs are residents and citizens of the State of California.  Compl. at ¶ 1.

73

one is landlocked as a result of the relocation or deprived of the use of a trail that allows them to traverse the shoreline. Plaintiffs' reliance on <u>Bremer</u> is therefore misplaced, as <u>Bremer</u> does not support their contention that they may seek relief pursuant to HRS § 7-1.  Consequently, Plaintiffs' HRS § 7-1 claim fails as a matter of law - based on waiver and lack of standing - and said claim is dismissed.

In summary, the County, through its Planning Director, had the authority to order the relocation of the trail in 2007. As a result, 1) Plaintiffs cannot sustain their claims against Defendants or any claims against the County; 2) the claims against Defendants are extinguished; and 3) Plaintiffs' Complaint is DISMISSED.  The dismissal of the Complaint moots the Third-Party Complaint, and dispenses of the need to address the County's Motion.  The Court therefore deems moot the County's Motion.

Even if the County lacked the authority to order the trail location, Plaintiffs' claims fail as a matter of law, and/or Plaintiffs could not prevail on summary judgment because genuine issues of material fact exists as to whether they acted with "unclean hands."  Accordingly, Plaintiffs' Motion is DENIED, Defendants' Motions are GRANTED, the Third-Party Complaint is moot, and the County's Motion is likewise moot.

74

<u>CONCLUSION</u>

Based on the foregoing, the Court HEREBY:

1) DENIES Plaintiffs' Motion for Partial Summary Judgment Against Defendants as to Count I of Plaintiffs' Complaint, filed February 16, 2010;

2) GRANTS Defendants' Motion for Partial Summary Judgment Based Upon County of Hawaii's Authority and the Declaration of Protective Covenants, Conditions and Restrictions for The Bluffs at Mauna Kea, filed May 14, 2010;

3) GRANTS Defendants' Motion for Partial Summary Judgment Regarding the Ala Kahakai National Historic Trail, filed May 14, 2010;

4) DISMISSES the Complaint;

5) DEEMS MOOT the Third-Party Complaint; and

6) DEEMS MOOT the County's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, filed May 14, 2010.

The only claims remaining for disposition are those set forth in Defendants' Counterclaim.

IT IS SO ORDERED.

DATED:    Honolulu, Hawaii, July 19, 2010.



_____
Kevin S.C. Chang
United States Magistrate Judge

CV 08-00533 KSC; <u>GUNDERSON, ET AL. V. MAUNA KEA PROPERTIES, INC., ET AL.</u>;
ORDER 1) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST
DEFENDANTS AS TO COUNT I OF PLAINTIFFS' COMPLAINT; 2) GRANTING
DEFENDANTS/THIRD-PARTY PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT BASED
UPON COUNTY OF HAWAII'S AUTHORITY AND THE DECLARATION OF PROTECTIVE COVENANTS,
CONDITIONS AND RESTRICTIONS FOR THE COUNTY OF HAWAII; 3) GRANTING
DEFENDANTS/THIRD-PARTY PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
REGARDING THE ALA KAHAKAI NATIONAL HISTORIC TRAIL; AND 4) DEEMING MOOT THIRD-
PARTY DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY
JUDGMENT